UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JANE A. RESTANI, JUDGE

| | |
|---|---|
| DALIAN HUALING WOOD CO., LTD., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Court No. 22-00334 |
| v. ) | |
| ) | PUBLIC VERSION |
| UNITED STATES, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| AMERICAN KITCHEN CABINET ) | |
| ALLIANCE, ) | |
| ) | |
| Defendant-Intervenor. ) | |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S RULE 56.2
## MOTION FOR JUDGMENT UPON THE AGENCY RECORD

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

TARA K. HOGAN
Assistant Director

OF COUNSEL

ALEXANDER FRIED
Attorney
Office of the Chief Counsel
  For Trade Enforcement and Compliance
U.S. Department of Commerce
Washington, D.C.

EMMA E. BOND
Trial Attorney
U.S. Department of Justice
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, D.C.  20044
Tel: (202) 305-2034
Email: emma.e.bond@usdoj.gov

August 24, 2023

*Attorneys for Defendant United States*

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ....................................................................................iv

STATEMENT PURSUANT TO RULE 56.2(c) ...........................................................2

    I.      The Administrative Determination Under Review ...............................................2

    II.     Issues Presented for Review ...............................................................................2

STATEMENT OF FACTS ........................................................................................2

    I.      Hualing Requests A New Shipper Review Of The Antidumping Duty Order Based On A Single Sale Of Subject Merchandise ...............................................2

    II.     Hualing Requests An Administrative Review Of The Antidumping Duty Order For The Same Sale Covered By The New Shipper Review ..................................3

    III.    After Commerce Preliminarily Rescinds The New Shipper Review, Hualing Requests Voluntary Respondent Status In The Administrative Review, Re-Submitting The Questionnaire Responses From The New Shipper Review .........4

    IV.    Commerce Preliminarily Rescinds The Administrative Review With Respect To Hualing, Determining That Hualing's Single Sale Is Not *Bona Fide* ...................5

    V.     In The Final Results, Commerce Rescinds The Administrative Review Based On Its Determination That Hualing Had No *Bona Fide* Sales During The Period Of Review ...........................................................................................................7

SUMMARY OF ARGUMENT ..................................................................................7

ARGUMENT .........................................................................................................9

    I.      Standard of Review ...........................................................................................9

    II.     Commerce Reasonably Conducted A *Bona Fides* Analysis Regarding Hualing's Sale During The Period Of Review ....................................................................10

          A.    Commerce Reasonably Explained That It Had Resources To Conduct A *Bona Fides* Analysis In The Unique Circumstances Of This Case .........11

                 i.     Commerce Reasonably Explained That Hualing Was Not A "Typical" Separate Rate Applicant.............................................12

ii.    Commerce Reasonably Explained That It Possessed The Resources To Evaluate The *Bona Fides* Nature Of Hualing's Single Sale In This Review ................................................................................15

B.    Hualing's Remaining Arguments Are Unpersuasive ..............................18

i.    Hualing Failed To Exhaust Administrative Remedies With Respect To Its New Statutory Argument And Its Claim Of Inconsistency With The Countervailing Duty Proceeding ..................................18

ii.    In Any Event, Commerce Possesses Authority To Evaluate The *Bona Fides* Nature Of Sales For Entries In An Administrative Review ........................................................................20

iii.    The Countervailing Duty Proceeding Is A Separate Proceeding 22

III.    Substantial Evidence Supports Commerce's Determination That Hualing's Sale Is Not *Bona Fide* ....................................................................................24

A.    Substantial Evidence Supports Commerce's Determination That Hualing's Sales Price Was Atypical ........................................................24

i.    Commerce Reasonably Compared The Price Of Hualing's Sale With Broad-Based Averages For The Period Of Review ............26

ii.    Commerce Reasonably Compared The Pricing Of Hualing's Sale With Separate Rate Applicants, The Mandatory Respondent, And Hualing's Domestic Sales, As Confirmation That Hualing's Pricing Was Atypical ................................................................30

iii.    Hualing's Remaining Arguments Regarding Pricing Are Unpersuasive ............................................................................33

B.    Commerce Reasonably Determined That Hualing's Single Sale Was Not Made In Commercial Quantities ..........................................................34

C.    Substantial Evidence Supports Commerce's Finding That The Timing Of Hualing's Sale Is Not Indicative Of A *Bona Fide* Sale ..........................36

D.    Substantial Evidence Supports Commerce's Finding That The Expenses Incurred By The U.S. Importer Further Indicate That Hualing's Sale Was Not *Bona Fide* ........................................................................38

E.    Even If The Goods Were Resold At A Profit, The Resale Price Was Atypical And Not Indicative Of Future Commercial Practices ..............40

F. The Overall Circumstances Of The Single Sale Indicate The Sale Was Not Made At Arms-Length ........................................................................... 42

G. Commerce Reasonably Determined That Other Relevant Factors—And The Totality Of The Circumstances—Support Finding The Sale Is Not *Bona fide* ............................................................................................... 44

CONCLUSION ....................................................................................................... 45

## TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Am. Silicon Techs. v. United States*,
  110 F. Supp. 2d 992 (Ct. Int'l Trade 2000) ............................................................. 40

*Boomerang Tube LLC v. United States*,
  856 F.3d 908 (Fed. Cir. 2017) ............................................................................... 19

*Cleo Inc. v. United States*,
  501 F.3d 1291 (Fed. Cir. 2007) .............................................................................. 10

*Consolo v. Fed. Mar. Comm'n*,
  383 U.S. 607 (1966) ........................................................................... 9, 38, 42, 43

*Corus Staal BV v. United States*,
  502 F.3d 1370 (Fed. Cir. 2007) .............................................................................. 19

*Echjay Forgings Private Ltd. v. United States*,
  475 F. Supp. 3d 1350 (Ct. Int'l Trade 2020) ......................................................... 22

*FAG U.K., Ltd. v. United States*,
  20 C.I.T. 1277, 945 F. Supp. 260 (1996) ............................................................... 21

*Fresh Garlic Producers Ass'n v. United States*,
  121 F. Supp 3d 1313 (Ct. Int'l Trade 2015) .............................................. 14, 17, 21

*Fujitsu Gen. Ltd. v. United States*,
  88 F. 3d 1034 (Fed. Cir. 1996) ........................................................................... 9, 10

*Hebei New Donghua Amino Acid Co. v. United States*,
  374 F. Supp. 2d 1333 (Ct. Int'l Trade 2005) .............................................. 5, 43, 44

*Hoogovens Staal BV v. United States*,
  4 F. Supp 2d 1231, 1220 (Ct. Int'l Trade 1998) ..................................................... 38

*Huzhou Muyun Wood Co. v. United States*,
  324 F. Supp. 3d 1364 (Ct. Int'l Trade 2018) ...................................... 35, 36, 39, 43

*Hyundai Elec. & Energy Sys. Co. v. United States*,
  15 F.4th 1078 (Fed. Cir. 2021) .............................................................................. 11

*JBF RAK LLC v. United States*,
  790 F.3d 1358 (Fed. Cir. 2015) ........................................................................ 10, 30

*Jiaxing Bro. Fastener Co. v. United States*,
　822 F.3d 1289 (Fed. Cir. 2016)......................................................................11, 12

*Jinxiang Chengda Import & Export Co., Ltd. v. United States*,
　37 C.I.T. 418 (2013)......................................................................................27, 28

*Novolipetsk Steel Pub. Joint Stock Co. v. United States*,
　483 F. Supp. 3d 1281 (Ct. Int'l Trade 2020)....................................................passim

*PAM, S.p.A. v. United States*,
　582 F.3d 1336 (Fed. Cir. 2009)............................................................................9

*Qingdao Sea-Line Trading Co. v. United States*,
　766 F.3d 1378 (Fed. Cir. 2014).............................................................. 12, 19, 20

*QVD Food Co. v. United States*,
　658 F.3d 1318 (Fed. Cir. 2011)...........................................................................22

*Shandong Chenhe Intern. Trading Co. v. United States*,
　34 C.I.T. 1472 (2010)........................................................................................27

*Tianjin Tiancheng Pharm. Co. v. United States*,
　366 F. Supp. 2d 1246 (Ct. Int'l Trade 2005) ...................................................passim

*U.S. Steel Grp. v. United States*,
　96 F.3d 1352 (Fed. Cir. 1996) .......................................................... 10, 27, 30, 31

*United States v. Eurodif S.A.*,
　555 U.S. 305 (2009) ...........................................................................................9

*United States v. Zenith Radio Corp.*,
　562 F.2d 1209 (C.C.P.A. 1977) ..........................................................................10

*Vicentin S.A.I.C. v. United States*,
　404 F. Supp. 3d 1323 (Ct. Int'l Trade 2019) .......................................................22

*Viet I-Mei Frozen Foods Co. v. United States*,
　839 F.3d 1099 (Fed. Cir. 2016)................................................................. 4, 13, 14

*Windmill Int'l Pte., Ltd. v. United States*,
　26 C.I.T. 221, 193 F. Supp. 2d 1303 (2002)........................................................21

## STATUTES

19 U.S.C. § 1516a(b)(2)(A)................................................................................23

19 U.S.C. § 1675.............................................................................................43

19 U.S.C. § 1675(a)(2).....................................................................................20

19 U.S.C. § 1675(a)(2)(B) ................................................................................................3

19 U.S.C. § 1677a(d) ......................................................................................................39

19 U.S.C. § 1677f-1(c)(2) ...............................................................................................13

19 U.S.C. § 1677m(a)(1) .............................................................................................4, 13

19 U.S.C § 1677m(a)(2) ..................................................................................................14

28 U.S.C. § 2637(d) ........................................................................................................18

Pub. L. No. 114-125 ........................................................................................................21

U.S.C. § 1677m(a)(1) ..................................................................................................4, 13

## REGULATIONS

19 C.F.R. § 351.213(d)(3) ...............................................................................................21

## COMMERCE DECISIONS

*Certain Hot-Rolled Flat-Rolled Carbon-Quality Steel Products From the Russian Federation: Final Results and Rescission of Antidumping Duty Administrative Review; 2016-2017,*
    84 Fed. Reg. 38,948 (Dep't of Commerce, Aug. 8, 2019), and accompanying IDM ..............22

*Certain New Pneumatic Off-the-Road Tires from the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2012-2013,*
    80 Fed. Reg. 20,197 (April 15, 2015), and accompanying IDM .............................................10

*Certain Passenger Vehicle and Light Truck Tires From the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2019–2020;*
    87 Fed. Reg. 13,966 (Dep't of Commerce Mar. 11, 2022), and accompanying IDM  .............10

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review and Preliminary Determination of No Shipments; 2013-2014,*
    80 Fed. Reg. 80,746 (Dep't of Commerce, Dec. 28, 2015), and accompanying PDM ...........11

*Mattresses from China: Rescission of 2020 Antidumping Duty New Shipper Review,*
    86 Fed. Reg. 31,275 (Dep't of Commerce June 11, 2021), and accompanying IDM, at 13;

*Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, From China: Preliminary Results and Intent to Rescind the Review, in Part; 2019-2020,*
    86 Fed. Reg. 36,099 (Dep't of Commerce, July 8, 2021), and accompanying PDM ...............14

*Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, from China: Final Results and Partial Rescission of Review; 2019-2020,*
  87 Fed. Reg. 1,120 (Dep't of Commerce, Jan. 10, 2022) ......................................................14

*Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, from China: Final Results and Partial Rescission of Review; 2017–2018,*
  85 Fed. Reg. 9,459 (Dep't of Commerce, Feb. 19, 2020) ......................................................35

*Tapered Roller Bearings and Parts Thereof, Finished or Unfinished, from China: Preliminary Results of the 2008-2009 Administrative Review of the Antidumping Duty Order,*
  75 Fed. Reg. 41,148 (Dep't of Commerce, July 15, 2010) ....................................................15

*Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, from China: Final Results of the 2008-2009 Antidumping Duty Administrative Review,*
  76 Fed. Reg. 3,086 (Dep't of Commerce, Jan. 19, 2011)......................................................15

*Wooden Cabinets and Vanities and Components Thereof From China: Preliminary Recission of Antidumping Duty New Shipper Review; 2020,*
  86 Fed. Reg. 46,178 (Dep't of Commerce, Aug. 18, 2021), and accompanying PDM ..............4

*Wooden Cabinets and Vanities and Components Thereof From China: Recission of Antidumping Duty New Shipper Review; 2020,*
  86 Fed. Reg. 62,788 (Dep't of Commerce, Nov. 12, 2021).  ....................................................4

*Wooden Cabinets and Vanities and Components Thereof From China: Prelim. Results and Partial Recission of the Antidumping Duty Administrative Review; 2019-2021,*
  87 Fed. Reg. 27,090 (Dep't of Commerce May 6, 2022)..........................................................5

*Wooden Cabinets and Vanities and Components Thereof From China: Preliminary Results of Countervailing Duty Administrative Review, Rescission and Intent To Rescind Administrative Review, in Part; 2019-2020,*
  87 Fed. Reg. 27,099 (Dep't of Commerce, May 6, 2022)..........................................................6

*Wooden Cabinets and Vanities and Components Thereof From China: Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2019-2020,*
  87 Fed. Reg. 51,967 (Dep't of Commerce, Aug. 24, 2022) ....................................................6.

*Wooden Cabinet and Vanities and Components Thereof from China: Final Results and Partial Rescission of the Antidumping Duty Administrative Review; 2019-2021,*
  87 Fed. Reg. 67,674 (Nov. 9, 2022)..........................................................................................2

*Wooden Cabinets and Vanities and Components Thereof From China: Antidumping Duty Order,*
  85 Fed. Reg. 22,126 (Dep't of Commerce, Apr. 21, 2020)......................................................2

*Wooden Cabinets and Vanities and Components Thereof From China: Initiation of Antidumping Duty New Shipper Review,*
  85 Fed. Reg. 77,162 (Dep't of Commerce, Dec. 1, 2020)........................................................3

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JANE A. RESTANI, JUDGE

_____ )
DALIAN HUALING WOOD CO., LTD.,                )
                                               )
                    Plaintiff,                 )
                                               )        Court No. 22-00334
          v.                                   )
                                               )        PUBLIC VERSION
UNITED STATES,                                 )
                                               )
                    Defendant,                 )
                                               )
          and                                  )
                                               )
AMERICAN KITCHEN CABINET                       )
ALLIANCE,                                      )
                                               )
                    Defendant-Intervenor.      )
_____ )

**DEFENDANT'S RESPONSE TO PLAINTIFF'S RULE 56.2**
**MOTION FOR JUDGMENT UPON THE AGENCY RECORD**

Defendant, the United States, respectfully submits this response to the motion for

judgment upon the agency record submitted by plaintiff, Dalian Hualing Wood Co., Ltd

(Hualing), challenging the final results of the first administrative review of the antidumping

order covering Wooden Cabinet and Vanities and Components Thereof from the People's

Republic of China (China).  In the final results, Commerce rescinded the review with respect to

Hualing based on the determination that Hualing's single sale during the period of review was

not *bona fide*.  For the reasons below, Hualing's motion should be denied because Commerce's

final results are supported by substantial evidence and are otherwise in accordance with the law.

STATEMENT PURSUANT TO RULE 56.2(c)

III.    The Administrative Determination Under Review

Hualing challenges Commerce's final results in the first administrative review of the

antidumping duty order on wooden cabinets and vanities and components thereof from China.

*See Wooden Cabinet and Vanities and Components Thereof from China: Final Results and*

*Partial Rescission of the Antidumping Duty Administrative Review; 2019-2021* (*Final Results*),

87 Fed. Reg. 67,674 (Nov. 9, 2022) (P.R. 307), and accompanying Issues & Decision Mem.

(IDM) (Nov. 2, 2022) (P.R. 305).[1] The administrative review covers entries of subject

merchandise made during the period from October 9, 2019, to March 31, 2021.

IV.    Issues Presented for Review

1.    Whether Commerce provided a reasoned basis for considering the *bona fides* of

Hualing's sale in the administrative review.

2.    Whether substantial evidence supports Commerce's determination that Hualing's

single sale during the period of review was not *bona fide*.

STATEMENT OF FACTS

I.    Hualing Requests A New Shipper Review Of The Antidumping Duty Order Based On A
      Single Sale Of Subject Merchandise

On April 21, 2020, Commerce issued an antidumping duty order covering wooden

cabinets and vanities and components thereof from China.  *Wooden Cabinets and Vanities and*

*Components Thereof From China: Antidumping Duty Order*, 85 Fed. Reg. 22,126 (Dep't of

Commerce, Apr. 21, 2020).  Hualing requested a new shipper review based on a single sale of

the subject merchandise, and on December 1, 2020, Commerce initiated a new shipper review of

---

[1] "P.R. _" and "C.R. _" refer to documents in the public and confidential administrative
records, respectively.

the antidumping duty order with the period of review from April 1, 2020, through September 30, 2020. *See Wooden Cabinets and Vanities and Components Thereof From China: Initiation of Antidumping Duty New Shipper Review*, 85 Fed. Reg. 77,162 (Dep't of Commerce, Dec. 1, 2020). In initiating the new shipper review, Commerce stated that it "intend{ed} to conduct this {new shipper review} in accordance with section 751(a)(2)(B) of the Act," codified at 19 U.S.C. § 1675(a)(2)(B). *Id.* at 77163. Subsection (iv) of that provision states that "{a}ny weighted average dumping margin . . . determined for an exporter or producer" in a new shipper review "shall be based solely on the *bona fide United States sales* of an exporter or producer, as the case may be, made during the period covered by the review." 19 U.S.C. § 1675(a)(2)(B)(iv) (emphasis added).

II.    Hualing Requests An Administrative Review Of The Antidumping Duty Order For The
       Same Sale Covered By The New Shipper Review

Several months later, on April 30, 2021, Hualing requested an administrative review of the period of review from October 9, 2019, through March 31, 2021, covering the same sale at issue in the ongoing new shipper review. *See* Hualing Request for Review (April 30, 2021) (P.R. 18); *see also* IDM at 9 (stating that Hualing's single sale was the basis for the new shipper review and the administrative review). In June 2021, Commerce initiated the administrative review. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 86 Fed. Reg. 31,292 (Dep't of Commerce, June 11, 2021) (P.R. 27). On July 16, 2021, more than seven months after Commerce initiated the new shipper review, Hualing submitted its separate rate application in the administrative review proceeding. Hualing Separate Rate Application (July 16, 2021) (P.R. 105).

III.    After Commerce Preliminarily Rescinds The New Shipper Review, Hualing Requests
        Voluntary Respondent Status In The Administrative Review, Re-Submitting The
        Questionnaire Responses From The New Shipper Review

On August 18, 2021, Commerce published its preliminary intent to rescind the new

shipper review, stating that "Hualing does not meet the minimum requirements" for a new

shipper review "because it shipped subject merchandise during the {period of investigation}."

*Wooden Cabinets and Vanities and Components Thereof From China: Preliminary Recission of*

*Antidumping Duty New Shipper Review*; *2020* (*Prelim. Rescission NSR*), 86 Fed. Reg. 46,178

(Dep't of Commerce, Aug. 18, 2021), and accompanying Preliminary Decision Mem. (PDM).

Given Hualing's ineligibility for a new shipper review, Commerce did not conduct "a detailed

*bona fides* analysis for these preliminary results." *Id.* Nonetheless, Commerce stated that it

"intend{ed} to examine the *bona fides* nature of Hualing's sale in the context of the

administrative review." *Id.*; *see also* IDM at 7 (recounting Commerce's statement "in Hualing's

rescinded new shipper review that {Commerce} would examine the *bona fides* nature of

Hualing's single sale in the context of the administrative review"). Commerce rescinded the new

shipper review on November 12, 2021. *Wooden Cabinets and Vanities and Components Thereof*

*From China: Recission of Antidumping Duty New Shipper Review; 2020*, 86 Fed. Reg. 62,788

(Dep't of Commerce, Nov. 12, 2021).

Soon after Commerce preliminarily rescinded Hualing's new shipper review, Hualing

sought voluntary respondent status in the administrative review. Hualing Sec. A Questionnaire

Response & Voluntary Respondent Request (Sept. 3, 2021) (P. R. 147). "{A} company not

selected for individual examination may voluntarily submit questionnaire responses containing

all of the information requested from mandatory respondents and request individual examination

under 19 U.S.C. § 1677m(a)(1)." *Viet I-Mei Frozen Foods Co. v. United States*, 839 F.3d 1099,

4

1101 (Fed. Cir. 2016) (footnote omitted).  "Hualing timely refiled its responses to the initial

{antidumping duty} questionnaire and supplemental questionnaires it submitted in its previously

rescinded new shipper review."  IDM at 8.  The information that Hualing re-submitted to

Commerce included information necessary for evaluating the *bona fides* nature of Hualing's

single sale.  IDM at 8.

IV.   Commerce Preliminarily Rescinds The Administrative Review With Respect To Hualing,
      Determining That Hualing's Single Sale Is Not *Bona Fide*

    In the preliminary results of the administrative review, Commerce preliminarily

determined that Hualing's single sale was not *bona fide*, and preliminarily rescinded the review

with respect to Hualing.  *Wooden Cabinets and Vanities and Components Thereof From China:*

*Prelim. Results and Partial Recission of the Antidumping Duty Administrative Review; 2019-*

*2021*, 87 Fed. Reg. 27,090 (Dep't of Commerce May 6, 2022) (*Preliminary Results*) (P.R. 256),

and accompanying PDM (P.R. 253); *see also* Prelim. *Bona Fides* Mem. (May 11, 2022) (C.R.

127, P.R. 257).  Commerce explained that when, as in Hualing's case, "an administrative review

is based upon a single sale, exclusion of that sale as non-*bona fide* necessarily will result in

Commerce rescinding the review."  PDM at 9 (citing, *e.g.*, *Tianjin Tiancheng Pharm. Co. v.*

*United States* (*TTPC*), 366 F. Supp. 2d 1246, 1260 (Ct. Int'l Trade 2005)).  "In determining

whether a respondent's sales are *bona fide*," Commerce examines "a number of factors" relating

to the commercial realities surround the sales of subject merchandise.  PDM at 9.  "To determine

whether a sale is 'unrepresentative or extremely distortive' and, therefore, not reviewable due to

its non-*bona fides* status, Commerce employs a totality-of-the-circumstances test," examining

"whether the transaction is 'commercially reasonable' or 'atypical.'"  PDM at 9-10 (citing, *e.g.*,

*Hebei New Donghua Amino Acid Co. v. United States*, 374 F. Supp. 2d 1333, 1339 (Ct. Int'l

Trade 2005)).

In evaluating whether Hualing's sale was *bona fide*, Commerce considered: (1) "the price of the sale," (2) "whether the sale was made in commercial quantities," (3) "the timing of the sale," (4) "the expenses arising from the transaction," (5) "whether the goods were resold at a profit," (6) "whether the transaction was made on an arm's-length basis," and (7) "any other factor that Commerce considers to be relevant to whether the sale at issue is 'likely to be typical of those the exporter or producer will make after the completion of the review.'"  PDM at 10 (citing 19 U.S.C. § 1675(a)(2)(B)(iv)); *see also* PDM at 9 (discussing Commerce's "well-established practice of conducting *bona fides* analysis in administrative reviews," and explaining that Commerce "looks to {1675(a)(2)(B)(iv)}, which governs {new shipper reviews}, for guidance in conducting this analysis in administrative reviews").  Applying these criteria to Hualing's sale, Commerce preliminarily determined "that Hualing did not make a *bona fide* sale" for antidumping duty purposes during the period of review.  PDM at 10.

On the same day that Commerce issued the preliminary results in the first administrative review of the antidumping duty order, Commerce also issued preliminary results in the administrative review of the countervailing duty order.  *See Wooden Cabinets and Vanities and Components Thereof From China: Preliminary Results of Countervailing Duty Administrative Review, Rescission and Intent To Rescind Administrative Review, in Part; 2019-2020*, 87 Fed. Reg. 27,099 (Dep't of Commerce, May 6, 2022).  Hualing was the mandatory respondent in the countervailing duty review.  *Id.*, *see also Wooden Cabinets and Vanities and Components Thereof From China: Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2019-2020*, 87 Fed. Reg. 51,967 (Dep't of Commerce, Aug. 24, 2022).

V.      In The Final Results, Commerce Rescinds The Administrative Review Based On Its
        Determination That Hualing Had No *Bona Fide* Sales During The Period Of Review

In its case brief in the antidumping duty administrative review, Hualing argued that

Commerce had arbitrarily departed from its practice not to perform a *bona fides* analysis for

separate rate applicants and that, in any event, the *bona fides* analysis was not supported by

substantial evidence.  *See generally* Hualing Case Br. (July 1, 2022) (C.R. 139, P.R. 281).

Hualing did not mention Commerce's treatment of its sale in the parallel countervailing duty

preliminary results.  *See id.*  Nor did Hualing dispute the statutory authority for analyzing *bona*

*fide* sales in administrative reviews.  *See id.*

In the final results, Commerce adhered to its determination that Hualing's single sale was

not *bona fide*, explaining that Hualing's single sale was atypical and not indicative of regular

business practices due to "the high price and the commercial quantity; the timing of the sale; the

resale price; the nature of the arm's-length transaction; and other relevant factors such as the

single sale made during the POR and the 'specialty' nature of the product."  IDM at 23; Hualing

Final *Bona Fides* Mem. (Nov. 4, 2022) (C.R. 142, P.R. 306).

SUMMARY OF ARGUMENT

Commerce's determination that Hualing's single sale was not *bona fide* is lawful and

supported by substantial evidence.  As an initial matter, Commerce reasonably explained its

decision to analyze the *bona fides* of Hualing's sale despite a general practice not to engage in

such a resource-intensive analysis for separate rate applicants.  As Commerce explained, Hualing

was not a typical separate rate applicant because it had previously initiated a new shipper review

covering the same sale involved in this administrative review.  In the new shipper review,

Commerce was required by statute, 19 U.S.C. § 1675(a)(2)(B)(iv), to evaluate the *bona fides* of

Hualing's single sale.  Although Commerce ultimately rescinded the new shipper review because

Hualing was not a new shipper, Hualing had developed the record in the new shipper review with questionnaire responses responsive to the *bona fides* nature of its single sale. Hualing then requested voluntary respondent status in the administrative review, and submitted the same questionnaire responses from the new shipper review to support that request. Thus, Commerce had on the record in this review all information necessary to evaluate the *bona fides* of Hualing's sale. Commerce reasonably explained that, under these circumstances, it possessed the resources to evaluate Hualing's sale.

Before this Court, Hualing challenges Commerce's explanation for departing from past practice, but, as Commerce explained, it is in the best position to evaluate its own resource constraints. Hualing also makes two new arguments not raised before Commerce, challenging Commerce's statutory authority to evaluate the *bona fides* nature of Hualing's sale and Commerce's purported inconsistent treatment between the countervailing duty review and the antidumping duty review. Because Hualing failed to exhaust these arguments before Commerce, this Court should decline to consider them. In any event, these arguments are unpersuasive on the merits, as Commerce possesses authority in administrative reviews to evaluate whether the sales being reviewed are *bona fide*, and each proceeding is reviewed based on its own record.

On the merits, substantial evidence supports Commerce's determination that Hualing's single sale was not *bona fide*. Considering the totality of the circumstances, Commerce reasonably determined that Hualing's single sale was atypical and not indicative of regular business practices. Considerations supporting this decision include the high price of the single sale; the lack of commercial quantities and absence of any other sales (past or present) of the specialty merchandise into the United States by the U.S. importer or Hualing; the timing of the sale; the resale price; the nature of the transaction; and the "specialty" nature of the product.

8

Hualing's arguments before this Court amount to mere disagreement with Commerce's weighing of the facts and exercise of discretion in its methodology for conducting the *bona fides* analysis. Because Commerce's *bona fides* determination is supported by substantial evidence, the Court should sustain the decision to rescind the review with respect to Hualing.

ARGUMENT

I.      Standard Of Review

In reviewing Commerce's antidumping or countervailing duty determinations, "the Court of International Trade must sustain 'any determination, finding or conclusion found' by Commerce unless it is 'unsupported by substantial evidence on the record, or otherwise not in accordance with law.'" *Fujitsu Gen. Ltd. v. United States*, 88 F. 3d 1034, 1038 (Fed. Cir. 1996) (quoting 19 U.S.C. § 1516a(b)(1)(B)(i)).  "The specific factual findings on which {Commerce} relies in applying its interpretation are conclusive unless unsupported by substantial evidence." *United States v. Eurodif S.A.*, 555 U.S. 305, 316 n.6 (2009).

"{W}hen a statute fails to make clear 'any Congressionally mandated procedure or methodology for assessment of the statutory tests,' Commerce 'may perform its duties in the way it believes most suitable.'" *JBF RAK LLC v. United States*, 790 F.3d 1358, 1363 (Fed. Cir. 2015) (quoting *U.S. Steel Grp. v. United States*, 96 F.3d 1352, 1362 (Fed. Cir. 1996)). "Antidumping and countervailing duty determinations involve complex economic and accounting decisions of a technical nature, for which agencies possess far greater expertise than courts." *Fujitsu*, 88 F.3d at 1039 (citing *United States v. Zenith Radio Corp.*, 562 F.2d 1209, 1216 (C.C.P.A. 1977), *aff'd*, 437 U.S. 443 (1978).  When exercising such technical expertise to select and to apply methodologies to implement the dictates of the trade statute, Commerce

receives "tremendous deference" that is "both greater than and distinct from that accorded the agency in interpreting the statutes it administers." *Id*.

II.     Commerce Reasonably Conducted A *Bona Fides* Analysis Regarding Hualing's Sale During The Period Of Review

Commerce reasonably determined that Hualing's single sale during the period of review was not *bona fide*, and thus rescinded the review with respect to Hualing. Commerce explained that, although it did not normally conduct a *bona fides* analysis for separate rate applicants, in this case, Hualing was not a typical separate rate respondent and Commerce had the resources to conduct perform such an analysis. Hualing's arguments to the contrary are unpersuasive. Additionally, Hualing failed to exhaust administrative remedies with respect to its new arguments regarding Commerce's statutory authority and the parallel countervailing duty review. Each of these issues is discussed in further detail below.

A.     Commerce Reasonably Explained That It Had Resources To Conduct A *Bona Fides* Analysis In The Unique Circumstances Of This Case

It is generally not "Commerce's normal practice to conduct *bona fides* analysis for separate rate applicants." IDM at 7.[2] Rather, in such cases, Commerce typically relies on "CBP data and/or CBP entry documentation to determine if the separate rate applicant had suspended entries during the {period of review}. *OTR Tires from China* IDM at comment 3. This practice

---

[2] IDM at 7 (citing *Certain Passenger Vehicle and Light Truck Tires From the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2019–2020*; 87 Fed. Reg. 13,966 (Dep't of Commerce Mar. 11, 2022) (*Passenger Tires from China*), and accompanying Issues and Decisions Memorandum (IDM) at Comment 6; *Certain New Pneumatic Off-the-Road Tires from the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2012-2013*, 80 Fed. Reg. 20,197 (April 15, 2015) (*OTR Tires from China*), and accompanying IDM, at Comment 3; and *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review and Preliminary Determination of No Shipments; 2013-2014*, 80 Fed. Reg. 80,746 (Dep't of Commerce, Dec. 28, 2015) (*Solar Cells from China*), and accompanying PDM, at 12).

is grounded in Commerce's "resource constraints," and the "resource-intensive and complex *bona fide*s analysis." *OTR Tires from China* IDM at comment 3; *see also Passenger Tires from China* IDM at comment 6 (citing *OTR Tires from China* IDM); *Solar Cells from China* IDM at n.42 (citing *Passenger Tires from China* IDM). "{A} *bona fides* analysis requires the collection and evaluation of extensive information," and adding such an analysis "to the separate rate eligibility that Commerce must already conduct for every separate applicant would strain Commerce's resources, given the number of concurrent non-market economy (NME) administrative reviews and number of separate rate applicants." IDM at 8.

Nevertheless, Commerce is not "forever bound by its past practices." *Hyundai Elec. & Energy Sys. Co. v. United States*, 15 F.4th 1078, 1089–90 (Fed. Cir. 2021) (quoting *Jiaxing Bro. Fastener Co. v. United States*, 822 F.3d 1289, 1299 (Fed. Cir. 2016)). "Instead, 'each administrative review is a separate exercise of Commerce's authority that allows for different conclusions based on different facts in the record.'" *Id.* (quoting *Qingdao Sea-Line Trading Co. v. United States*, 766 F.3d 1378, 1387 (Fed. Cir. 2014)). As long as Commerce "articulate{s} sound reasons" for its determination and explains any departure from any past practice, the agency determination must be sustained. *See id.*

In the underlying administrative review, Commerce articulated sound reasons for analyzing the *bona fides* of Hualing's single sale in this review, explaining that Hualing was not a typical separate rate applicant and that Commerce possessed the resources to conduct the analysis. IDM at 7-9. Each of these explanations is supported by the record.

     i.    Commerce Reasonably Explained That Hualing Was Not A "Typical" Separate Rate Applicant

Commerce reasonably distinguished Hualing's case from prior proceedings in which Commerce had declined to evaluate the *bona fides* nature of sales by separate rate applicants. As

Commerce explained, "Hualing is not a typical separate rate respondent."  IDM at 9.  Instead, Hualing had previously requested a new shipper review for the same entry in the administrative review, requested voluntary respondent status in this review, and placed on the record of this review information from the new shipper review relating to the *bona fides* nature of its single sale.  IDM at 7-9.  In light of the statutory obligation to consider the *bona fides* of sales by new shippers, 19 U.S.C. § 1675(a)(2)(B)(iv), Commerce collected information during the new shipper review relating to the *bona fides* nature of Hualing's single entry.[3]  Although Commerce ultimately rescinded the new shipper review on other grounds, Commerce expressed its intent to evaluate the *bona fides* of the same sale in the parallel administrative review.  IDM at 7.  Hualing later requested voluntary respondent status and submitted the questionnaire responses from the new shipper review on the record in this review.  *See* IDM at 7-9.  "{T}hese responses included detailed information regarding the *bona fides* nature of Hualing's single transaction."  IDM at 9.

This Court has previously sustained a determination by Commerce on facts strikingly similar to this case, in which Commerce rescinded an administrative review of a single separate rate applicant because it had no reviewable *bona fide* sales.  *See Fresh Garlic Producers Assn'n v. United States*, 121 F. Supp 3d 1313, 1334-36 (Ct. Int'l Trade 2015).  In *Fresh Garlic Producers*, the separate rate applicant was a Chinese producer of subject merchandise that had previously requested a new shipper review.  *Id.* at 1334.  Commerce rescinded the new shipper review due to the absence of any *bona fide* sales, and later rescinded the applicant's administrative review because the Chinese producer "did not have any reviewable sales during

---

[3]  Commerce explained that Hualing's entry in the new shipper review was the same entry subject to the administrative review of the antidumping duty order.  *Final Rescission NSR*, 86 Fed. Reg. 62788 (stating that the relevant entry was also "subject to the administrative review covering the period April 1, 2020, through March 31, 2021, initiated on June 11, 2021").

the {period of review}." *Id.* The producer argued—as does Hualing in this case (Hualing Br. at 22)—"that it was arbitrary and capricious of Commerce to examine the *bona fide*s of its sales when it did not examine the *bona fide*s of any other separate rate respondents' sales." *Fresh Garlic Producers Assn'n*, 121 F. Supp 3d at 1335. The Court rejected the argument because it "ignores the fact that no other separate rate respondent filed {a new shipper review}, and, accordingly, Commerce had a reasonable explanation for why it treated {the Chinese producer} differently." *Id.*

In this case, similarly, Commerce reasonably explained that Hualing was differently situated than other separate rate applicants in light of its request for a new shipper review, request for voluntary respondent status, and submission of information on the record relevant to the *bona fides* nature of its sales. *See* IDM at 7-9.[4] As Commerce explained, "none of the cases cited by Hualing involve a situation where the separate rate applicant's single sale served as the basis for its new shipper review" that was later rescinded and "whose single {period of review} sale was already alleged to be non-*bona fide*." IDM at 9.

Hualing argues that "{a}s a separate rate applicant, and not a mandatory respondent, the sale at issue is not the basis for any 'weighted-average dumping margin determined in an administrative review." Hualing Br. at 14, 16 (citation omitted). This argument ignores that Hualing had requested voluntary respondent status, and thus, had asked Commerce to calculate an individual weighted-average dumping margin. IDM at 9. Hualing also submitted questionnaire responses to support voluntary respondent status, including responses documenting

---

[4] The new shipper review in *Fresh Garlic Producers* was rescinded due to the absence of *bona fide* sales, whereas Hualing's new shipper review was rescinded due to failure to qualify as a new shipper. The distinction is immaterial, however, because in both cases, "once Commerce had the information concerning the *non-bona fides* of {the Chinese producer's} sales it could not ignore that relevant information." *Fresh Garlic Producers Assn'n*, 121 F. Supp 3d at 1335.

the *bona fides* nature of Hualing's single sale.  IDM at 8-9.  Commerce was not required to ignore these distinguishing facts.

Furthermore, Hualing's arguments ignore other examples in which Commerce has analyzed the *bona fides* nature of sales by separate rate applicants in an administrative review. For example, Commerce rescinded another recent administrative review for two separate rate applicants after determining their sales were not *bona fide*.  *See* IDM at 8 (citing *Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, From China: Preliminary Results and Intent to Rescind the Review, in Part; 2019-2020* (*Tapered Roller Bearings Prelim. Rescission*), 86 Fed. Reg. 36,099 (Dep't of Commerce, July 8, 2021), and accompanying PDM, at 10, *unchanged in Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, from China: Final Results and Partial Rescission of Review; 2019-2020*, 87 Fed. Reg. 1,120 (Dep't of Commerce, Jan. 10, 2022).  In that review, Commerce evaluated the *bona fides* of separate rate applicants' sales after limiting the number of mandatory respondents selected for individual examination.  *Tapered Roller Bearings Prelim. Rescission* PDM.  Commerce "issued supplemental questionnaires to the separate rate applicants," and determined that the sales for two of them—Jingli and BRTEC—were not *bona fide*.  *Id.*  In explaining its reasoning, Commerce cited its "well-established practice of conducting *bona fide* sales analysis in administrative reviews."  *Id.*[5]

---

[5]  *See also Tapered Roller Bearings and Parts Thereof, Finished or Unfinished, from China: Preliminary Results of the 2008-2009 Administrative Review of the Antidumping Duty Order*, 75 Fed. Reg. 41,148 (Dep't of Commerce, July 15, 2010), *unchanged in Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, from China: Final Results of the 2008-2009 Antidumping Duty Administrative Review*, 76 Fed. Reg. 3,086 (Dep't of Commerce, Jan. 19, 2011) (evaluating the *bona fide*s of the single sale during the period of review from a voluntary respondent).

Hualing argues that "Commerce's intent to examine Hualing's sale does not justify departing from its practice."  Hualing Br. at 23 (capitalization altered).  However, Hualing chose to request a new shipper review and to place on the record in this review its questionnaire responses from the new shipper review.  IDM at 9.  Thus, "Hualing itself placed the information for conducting the *bona fide*s analysis on the record."  IDM at 8.  Hualing cannot claim prejudice from Commerce reviewing the information that Hualing unilaterally submitted on the record in this proceeding.

      ii.    Commerce Reasonably Explained That It Possessed The Resources To Evaluate The *Bona Fides* Nature Of Hualing's Single Sale In This Review

Commerce reasonably explained that it possessed the resources to consider the *bona fides* nature of Hualing's single sale in this proceeding.  Although Commerce normally declines to review the *bona fides* nature of separate rate applicants' single sales due to the "strain" on Commerce's resources, in this case, Commerce reasonably determined "that it had the resources to conduct a *bona fides* analysis of Hualing's sale."  IDM at 8.  As Commerce explained, by the time the *bona fide* sale issue was raised in the underlying administrative review, it "had already dedicated resources to determine whether Hualing was eligible for a new shipper review, indicated its intent to evaluate the *bona fide*s of Hualing's sale in the context of the administrative review, and dedicated the necessary resources to examine the information that Hualing placed on the administrative record of the review."  IDM at 8.

Hualing challenges Commerce's assessment of its available resources, contending that Commerce's *bona fides* analysis was inconsistent with its decision to limit "its examination to a reasonable number of exporters or producers" pursuant to 19 U.S.C. § 1677f-1(c)(2).  Hualing Br. at 18-20 (citations omitted).  This argument ignores that Hualing requested voluntary respondent status in the administrative review.  IDM at 9.  "{A} company not selected for

15

individual examination may voluntarily submit questionnaire responses containing all of the

information requested from mandatory respondents and request individual examination under 19

U.S.C. § 1677m(a)(1)."  *Viet I-Mei Frozen Foods Co. v. United States*, 839 F.3d 1099, 1101

(Fed. Cir. 2016) (footnote omitted).  Thus, by requesting voluntary respondent status, Hualing

requested the very individual review that it now claims Commerce lacked the resources to

perform.  To be sure, "Commerce may decline to fully investigate the respondents seeking

voluntary examination if it determines that the number of exporters or producers who have

submitted such requests is so large that individual examination of these voluntary respondents

'would be unduly burdensome and inhibit the timely completion of the investigation.'"  *Id.*

(quoting 19 U.S.C § 1677m(a)(2)).  Here, however, Commerce "did not preliminarily determine

in this review that it lacked the resources to examine Hualing's questionnaire responses."  IDM

at 9; *see also* PDM at 13.  Instead, Commerce explained that it "did not conduct a separate rate

analysis for Hualing because . . . the single sale to the United States is not *bona fide*; therefore,

there are no sales remaining under review for Hauling."  PDM at 13, *unchanged in* IDM at 7-9.

Hualing's claim of an inconsistency in Commerce's assessment of its resources also

ignores the practical impact of its request for a new shipper review, in which Commerce must

review whether the sale under review is *bona fide*, 19 U.S.C. § 1675(a)(2)(B)(iv).  IDM at 7-8

(citation omitted).  "When {Hualing} filed the {new shipper review} hoping for expedited

review, it became subject to the potential negative impact of that review on the administrative

review."  *See Fresh Garlic Producers Ass'n v. United States*, 121 F. Supp 3d 1313, 1334 - 36.

Not only did Hualing file the new shipper review, but it then requested voluntary respondent

status in the administrative review and placed questionnaire responses from the new shipper

review on the record in this proceeding.  *See* IDM at 7-9.  Thus, Hualing's own actions in

pursuing favorable treatment ultimately placed Commerce in the position of having the resources and information necessary to assess the *bona fides* nature of Hualing's single sale.

Finally, Hualing's challenge to Commerce's assessment of its resources is unpersuasive for the additional reason that "Commerce, not interested parties, is the best arbiter of its available resources."  IDM at 8.  Because Commerce reasonably explained that it possessed the resources to evaluate the *bona fides* nature of Hualing's sale under the unique circumstances of this case, the Court should sustain Commerce's determination.

B.      Hualing's Remaining Arguments Are Unpersuasive

For the first time before this Court, Hualing claims that Commerce lacks the statutory authority to evaluate whether Hualing's sale in the administrative review is *bona fide*.  Hualing Br. at 14, 16-18.  Hualing also argues—for the first time—that Commerce's rescission of this administrative review is inconsistent with its treatment of the same sale in the countervailing duty review.  *Id.* at 12-13.  The Court should decline to consider both arguments because Hualing has failed to exhaust administrative remedies by not raising either argument in its case briefs to Commerce.  In any event, both arguments are unpersuasive, as discussed below.

i.      Hualing Failed To Exhaust Administrative Remedies With Respect To Its New Statutory Argument And Its Claim Of Inconsistency With The Countervailing Duty Proceeding

Hualing failed to exhaust administrative remedies with respect to two new arguments: (1) that Commerce lacks statutory authority to examine the *bona fides* nature of Hualing's sale in the administrative review, and (2) that Commerce implicitly treated the single sale as *bona fide* in a countervailing duty proceeding.  *See* Hualing Br. at 12-14, 16-18.

This Court "shall, where appropriate, require the exhaustion of administrative remedies." 28 U.S.C. § 2637(d).  "This statutory mandate 'indicates a congressional intent that, absent a

strong contrary reason, the court should insist that parties exhaust their remedies before the pertinent administrative agencies.'" *Boomerang Tube LLC v. United States*, 856 F.3d 908, 912 (Fed. Cir. 2017) (quoting *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007)).  By regulation, interested parties must raise in their case brief all arguments that remain "relevant" to Commerce's "final determination or final results." *Corus Staal BV*, 502 F.3d at 1378 (citing 19 C.F.R. § 351.309(c)(2)).  This "is the prescribed administrative remedy for challenging aspects of the preliminary results with which a party disagrees." *Id.*  "{A} party's failure to raise an argument before Commerce constitutes a failure to exhaust its administrative remedies." *Qingdao Sea-Line Trading Co.*, 766 F.3d at 1388.

In the preliminary results, Commerce determined that Hualing "did not make any *bona-fide* sales during the {period of review} and is being preliminarily rescinded from the review." PDM at 1.  The case brief was Hualing's opportunity to raise all arguments to challenge that decision.  Yet, nowhere in Hualing's case brief did it raise its current argument that the statute— 19 U.S.C. § 1675(a)(2)(B)(iv)— "limits the *bona fide* analysis to sales used in the weighted-average calculation," and thus prohibits conducting such an analysis for separate rate applicants. Hualing Br. at 16-17.  Hualing's case brief to Commerce never mentions 19 U.S.C. § 1675(a)(2)(B)(iv).  Hualing Case Br. (July 1, 2022) (C.R. 139, P.R. 281).  Although Hualing's case brief argues that Commerce's decision to analyze the *bona fides* nature of its sales was "arbitrary and otherwise unlawful," *id.* at 16, this argument was based on Commerce's claimed departure from prior practice, not on any absence of statutory authority.  Hualing also argued that Commerce's *bona fides* analysis was unlawful because "Hualing's sale is not the basis of any "weighted-average dumping margin determined in an administrative review." *Id.* at 7 (citation omitted).  Here, too, however, Hualing's argument was based on the claimed departure from

18

Commerce's "well-established practice of not conducting such analysis," not based on the claimed lack of statutory authority. *Id.*

Nor did Hualing exhaust its new argument that Commerce's *bona fides* analysis in the antidumping duty administrative review conflicts with its treatment of Hualing in the countervailing duty administrative review. *See generally* Hualing Case Br. (C.R. 139, P.R. 281). The preliminary results in the antidumping and countervailing duty administrative reviews were issued on the same day, May 6, 2021. To the extent Hualing believed there was an inconsistency between the two, it had the opportunity and obligation to raise that concern in its case briefs in one (or both) proceedings. *See* 19 C.F.R. § 351.309(c)(2). Because Hauling failed to do so, the Court should decline to entertain Hualing's new arguments at this stage.[6]

ii.  In Any Event, Commerce Possesses Authority To Evaluate The *Bona Fides* Nature Of Sales For Entries In An Administrative Review

To the extent the Court nonetheless reaches the merits of Hualing's new statutory argument, Commerce possesses statutory authority to evaluate whether Hualing's sales are *bona fide*. *See* Hualing Br. at 16-18. "Commerce has authority to determine an appropriate methodology when conducting an administrative review and may disregard U.S. sales if it finds that those sales are not *bona fide*." *Novolipetsk Steel Pub. Joint Stock Co. v. United States*, 483 F. Supp. 3d 1281, 1293 (Ct. Int'l Trade 2020) (citing 19 U.S.C. §§ 1673(1), 1675(a), 1677a). "Under 19 U.S.C. § 1675(a)(2), in an administrative review, Commerce is instructed to evaluate each entry." *Fresh Garlic Producers Ass'n*, 121 F. Supp. 3d at 1335. "Under 19 C.F.R.

---

[6] Although Hualing briefly referenced this argument at the hearing, Hearing Transcript at 39-40 (Oct. 14, 2022) (P.R. 301), Commerce's regulation requires all arguments to be raised in the case briefs, not for the first time at the hearing, *see* 19 C.F.R. § 351.309(c)(2)). Indeed, at the hearing, Hualing was reminded to "limit {its} remarks to the issues raised in your case and rebuttal briefs." Hearing Transcript at 9 (P.R. 301).

§ 351.213(d)(3)," in turn, "Commerce 'may rescind an administrative review . . . if {Commerce} concludes that, during the period covered by the review, there were no entries, exports, or *sales* of the subject merchandise.'" *Id.* (quoting 19 C.F.R. § 351.213(d)(3)) (emphasis added). "In evaluating the *bona fides* of entries, Commerce is permitted to exclude certain sales when they are unrepresentative or extremely distortive." *Id.* (citing *Windmill Int'l Pte., Ltd. v. United States*, 26 C.I.T. 221, 224, 193 F. Supp. 2d 1303, 1307 (2002); *FAG U.K., Ltd. v. United States*, 20 C.I.T. 1277, 1281–82, 945 F. Supp. 260, 265 (1996)). Pursuant to these authorities, Commerce had authority to evaluate whether the sale underlying Hualing's single entry was *bona fide*.

Nor does Congress's enactment of 19 U.S.C. § 1675(a)(2)(B)(iv) alter Commerce's authority to determine an appropriate methodology when implementing section 1675(a)(2). *See* Trade Facilitation and Trade Enforcement Act of 2015 ("TFTEA"), Pub. L. No. 114-125, § 433, 130 Stat. 122 (2016) (enacting 19 U.S.C. § 1675(a)(2)(B)(iv)). This amendment reflects no Congressional "intent to preclude Commerce's authority to analyze the *bona fide*s of a U.S. sale in an administrative review." *Novolipetsk Steel*, 483 F. Supp. 3d at 1286. "Congress's amendments to § 1675(a)(2)(B) are not worded restrictively, but rather, impose an affirmative obligation on Commerce to ensure that U.S. sales used to calculate an individual margin for a new shipper are *bona fide*." *Id.* "The legislative history indicates that Congress was driven by concerns that exporters and producers were abusing their ability to obtain a new shipper rate on an expedited basis in order to circumvent antidumping and countervailing duties." *Id.* (citing H.R. Rep. No. 114-114, pt. 1, at 89 (2015)). In amending section 1675, Congress "did not make any changes to the provisions governing administrative reviews" that would imply an intent to preclude Commerce's authority to conduct a *bona fide* sales analysis in an administrative

review." *Id.* Thus, as it did before the 2016 amendment, Commerce possesses authority to evaluate the *bona fides* nature of sales for entries subject to administrative reviews.

iii.   <u>The Countervailing Duty Proceeding Is A Separate Proceeding</u>

Even if the Court reaches Hualing's argument alleging inconsistent treatment with the parallel countervailing duty proceeding, the argument is wrong on the merits.  *See* Hualing Br. at 12-13.  "Judicial review of antidumping duty administrative proceedings is normally limited to the record before the agency in the particular review proceeding at issue and does not extend to subsequent proceedings." *QVD Food Co. v. United States*, 658 F.3d 1318, 1324–25 (Fed. Cir. 2011) (citing 19 U.S.C. § 1516a(b)(2)(A)).  Nor does judicial review extend to parallel, but different proceedings, based on different administrative records.  *See*, *e.g.*, *Vicentin S.A.I.C. v. United States,* 404 F. Supp. 3d 1323, 1343 (Ct. Int'l Trade 2019) (discussing that antidumping and countervailing duty proceedings are treated as distinct, separate administrative proceedings); *Echjay Forgings Private Ltd. v. United States*, 475 F. Supp. 3d 1350, 1375 – 1378 (Ct. Int'l Trade 2020) (sustaining an allegedly inconsistent determination in an antidumping versus a countervailing duty proceeding).  Moreover, "the burden of creating an adequate record lies with {interested parties} and not with Commerce." *QVD Food Co.*, 658 F.3d at 1324–25 (citation omitted).

Applying these principles, Commerce correctly evaluated whether to engage in a *bona fides* analysis based on the record of this antidumping duty administrative review.  As Commerce explained, the underlying record includes questionnaire responses placed on the record by Hualing—questionnaire responses that were previously submitted in the new shipper review. IDM at 9.  Because Commerce is required to assess *bona fide* sales in new shipper reviews, 19 U.S.C. § 1675(a)(2)(B)(iv), these questionnaire responses contained information regarding the

21

PUBLIC VERSION

*bona fides* nature of Hualing's sale, *see* IDM at 9.  Unlike the antidumping duty administrative review, there was no parallel new shipper review associated with the countervailing duty proceeding.  In evaluating whether Commerce's determination is lawful and supported by substantial evidence, the Court should not—and may not—look beyond the record established before the agency in this review.  *See* 19 U.S.C. § 1516a(b)(2)(A)) (defining the scope of the record for review in proceedings before the Court of International Trade).

Hualing nonetheless argues that "{s}tatutorily, the same sale cannot be *bona-fide* in one proceeding and not the other because the same *bona fide* criteria apply to both {antidumping duty} and {countervailing duty} proceedings."  Hualing Br. at 13 (citing 19 U.S.C. § 1675(a)(2)(B)(iv)).  Hualing is incorrect.  Nothing in section 1675(a)(2)(B)(iv) overrides the bedrock principle that each proceeding is evaluated separately and based upon its own record. Moreover, to the extent Hualing claims that the application of section 1675(a)(2)(B)(iv) shows that Commerce "conduct{ed} a *bona fides* analysis" in the countervailing duty case, Hualing is mistaken.  *See* Hualing Br. at 12.  Section 1675(a)(2)(B)(iv) applies to new shipper reviews, and does not mandate *bona fide*s analysis in administrative reviews.  *See* 19 U.S.C. § 1675(a)(2)(B)(iv).[7]

In sum, Commerce reasonably determined to analyze whether Hualing's sale was *bona fide* on the basis of the record in this antidumping duty administrative review.

---

[7]  "Congress's silence regarding *bona fide* sales in administrative reviews does not mean that Commerce is not permitted to examine this issue in administrative reviews" but instead "means that Commerce is not required to conduct a *bona fide*s analysis in every administrative review, like it is in new shipper reviews."  *Certain Hot-Rolled Flat-Rolled Carbon-Quality Steel Products From the Russian Federation: Final Results and Rescission of Antidumping Duty Administrative Review; 2016-2017*, 84 Fed. Reg. 38,948 (Dep't of Commerce, Aug. 8, 2019), and accompanying IDM, *sustained in Novolipetsk Steel*, 483 F. Supp. 3d 1281.

III.   Substantial Evidence Supports Commerce's Determination That Hualing's Sale Is Not
       *Bona fide*

Commerce determined that Hualing's single sale during the period review was not *bona fide*, and thus rescinded the administrative review with respect to Hualing.  IDM at 9-23.  After weighing the totality of the circumstances, Commerce determined that Hualing's sale was "unlikely to be representative of Hualing's future sales to the U.S. importer or other customers."  IDM at 23.  In reaching this determination, Commerce weighing numerous factors including:

> (1) "the price of the sale,"
>
> (2) "whether the sale was made in commercial quantities,"
>
> (3) "the timing of the sale,"
>
> (4) "the expenses arising from the transaction,"
>
> (5) "whether the goods were resold at a profit,"
>
> (6) "whether the transaction was made on an arm's-length basis," and
>
> (7) "any other factor that Commerce considers to be relevant to whether the sale at issue is 'likely to be typical of those the exporter or producer will make after the completion of the review.'"

PDM at 10 (citing 19 U.S.C. § 1675(a)(2)(B)(iv)).  Hualing challenges Commerce's findings with respect to each of the factors.  As discussed below, Commerce's findings are supported by substantial evidence.

A.   Substantial Evidence Supports Commerce's Determination That Hualing's Sales
     Price Was Atypical

First, Commerce found that the sales price of Hualing's single sale was atypical and not representative of its business practices or indicative of its future selling practices.  IDM at 11-14.  Commerce used several data sets to conduct this comparison.  *Id.*  First, consistent with its practice of comparing "broad-based averages for the entire {period of review}," IDM at 11, Commerce compared the average unit value (AUV) of Hualing's entry to the AUV "of all imports of the same HTS number from China during the {period of review}."  Prelim *Bona*

*Fides* Mem. at 4 (C.R. 127, P.R. 257).  The AUV for Hualing's sale was "[███] percent more than the AUV of cabinets imported from China into the United States of the same HTS number during the {period of review}, making Hualing's sale price atypical." *Id.* at 4-5.  Likewise, Hualing's per-kilogram AUV was "[████████] than the per-KG AUV of subject merchandise in the CBP data."  Final *Bona Fides* Mem. at 2 (C.R. 142, P.R. 306) (citing Hualing Case Brief, Exhibit 3 (July 1, 2022) (C.R. 138, P.R. 281).

As an additional measure, Commerce compared Hualing's sale price to the sales made during the period of review "by other producers/exporters under review" and to Hualing's "own sales," conducting the comparison on a per-piece and per-kilogram basis.  *See* IDM at 12 (citation omitted).  "Hualing's AUV per piece ranges from [███] percent to [███] percent more than the other separate rate applicants and the mandatory respondent who reported sales on a per piece basis."  Prelim. *Bona Fides* Mem., at 5 (C.R. 127, P.R. 257).  "Hualing's AUV per KG (*i.e.*, $[████]) ranges from [███] percent to [███] percent more than the other separate rate applicants who reported sales on a KG basis."  *Id.*  Thus, Commerce determined that Hualing's price "is [████████]," compared to "other prices on the record of this review," *id.*, and that "Hualing's sales price is atypical when compared to the separate rate respondents' and the mandatory respondent's prices during the {period of review}," IDM at 12.[8]

Commerce also found that Hualing's U.S. sale was atypical "when compared to its domestic and third country sales made during the {period of review} and not representative of future sales of subject merchandise."  IDM at 12 (citation omitted).  "The price of Hualing's U.S.

---

[8] *See also* Prelim. *Bona Fides* Mem., at 5 (C.R. 127, P.R. 257) (citing Qufu Xinyu Section A Questionnaire Response (Oct. 19, 2021); KM Separate Rate Application (July 12, 2021) (C.R. 86-87, P.R. 182); PCZR's Separate Rate Application (July 12, 2021) (P.R. 72); Dalian Meisen Separate Rate Application (July 16, 2021) (C.R. 35-37, P.R. 92); and Suzhou Siemo Separate Rate Application (July 16, 2021) (C.R. 38, P.R. 93)).

sale of cabinets, [  ].”[9]  Final *Bona Fides* Mem. at 3 (C.R. 142, P.R.

306).

    Commerce rejected Hualing's arguments that the "specialty" and "unique" nature of its

cabinets demonstrated that its pricing is commercially reasonable.  *See, e.g.*, Prelim. *Bona Fides*

Mem. at 10 (P.R. 127, P.R. 257) (citation omitted).  Commerce explained that "the differences

between Hualing's cabinets and other cabinets are minor dimension adjustments (e.g., [████

████████████████ ])."  *Id.* (citing Hualing Voluntary Supp. Questionnaire, Att.

II (Feb. 24, 2021 Supplemental Questionnaire Response (SQR)), at 5-6, Exhibit SA-4 (Dec. 30,

2021) (C.R. 118-119, P.R. 211); Qufu Xinyu First Supplemental Questionnaire Response,

Exhibit SQ1-5 (Dec. 30, 2021) (C.R. 101, 110, P.R. 210)).  Moreover, neither Hualing nor its

importer "provided any supporting documentation . . . to demonstrate the typical price of [████]

cabinets on the U.S. market."  *Id.* at 10-11 (emphasis in original).

    Hualing challenges Commerce's findings.

        i.    Commerce Reasonably Compared The Price Of Hualing's Sale With
             <u>Broad-Based Averages For The Period Of Review</u>

    Hualing first challenges Commerce's use of a broad-based average derived from CBP

data, claiming that such an analysis cannot capture the specific characteristics of Hualing's sale,

such as the material used to produce the cabinets ([████]), and "how much [████] wood" was

used.  Hualing Br. at 26-28.  Instead, Hualing claims Commerce should have identified a "range

of prices of CBP data that are deemed commercially reasonable" and determined whether

---

   [9]  M3 refers to a cubic meter.

Hualing's sale fell within that range.  *Id.* at 27-28; 29-32.  Commerce rejected this argument, explaining that ranging the data results in "a comparison of single AUVs that do not capture the average per-unit price of subject merchandise."  IDM at 12.  Instead, Commerce stated that it would adhere to its "practice to use broad-based averages for the entire {period of review}, rather than ranged individual sales prices for comparison."  IDM at 11 (citing *Jinxiang Chengda Import & Export Co., Ltd. v. United States* (*Jinxiang Chengda*), 37 C.I.T. 418, 424 (2013), *aff'd*, 553 F. App'x 1005 (Fed. Cir. 2014); *Shanghai Sunbeauty Trading Co. v, United States*, 40 Int'l Trade Rep. (BNA) 1174 (Ct. Int'l Trade 2018)).  Unlike Hualing's proposed range of prices, Commerce's use of average unit values for CBP data "establishes a fair market price for all U.S. imports and a baseline for comparison."  IDM at 11 (citing *Jinxiang Chengda*, 37 C.I.T. at 418, 424; *TTPC*, 366 F. Supp. 2d at 1256).

    This Court has recognized that such broad-based averages can serve as "a useful tool for comparison because {they provide} a fair representation of prices set by the market."  IDM at 11 (quoting *Jinxiang Chengda*, 37 C.I.T. at 424; *Shanghai Sunbeauty Trading Co.*, 40 Int'l Trade Rep. 1174).  "Computing an average is arguably the most basic of all statistical techniques" because "{i}t permits compression of large quantities of data into a single representative figure capable of easy comprehension and assimilation."  *Jinxiang Chengda*, 37 C.I.T. at 424 (quoting *U.S. Steel Grp. v. United States,* 96 F.3d 1352, 1363 (Fed. Cir. 1996)).  "{U}sing the average of a large sample is a better indicator of normal activity than a comparison of a smaller number of selected sales."  *Id.* (quoting *Shandong Chenhe Intern. Trading Co. v. United States*, 34 C.I.T 1472, 1480 (2010)).  "{T}he larger the sample, the less risk run that the sample chosen is extreme or unusual simply by chance."  *Id.* (quoting *TTPC,* 366 F. Supp. 2d at 1256) (citation omitted).  Thus, "because it provides a fair point of comparison to measure commercial

reasonableness for prices during the {period of review}, Commerce's AUV analysis was a useful

tool for determining whether {plaintiff's} sales prices were aberrational." *See id.* at 425.

Hualing attempts to distinguish *Jinxiang Chengda* by arguing that the pricing data in that

case was atypical under *both* the average-unit-value comparison and the range-of-values

comparison. Hualing Br. at 31. The same is true in this case, however, with Commerce

explaining that "{e}ven when {Commerce} compare{d} Hualing's AUV to the range of AUVs,

{it} continue{d} to find Hualing's AUV atypical." IDM at 12 (citing Final *Bona Fides* Mem. at

2 (C.R. 142, P.R. 306)). When sorting the CBP data by [░░░░] average unit value, "Hualing's

entry is [░░] out of [░░░] for per-piece entries that entered" under the relevant Harmonized

Tariff Schedule classification within the period of review. Final *Bona Fides* Mem. at 2 (C.R.

142, P.R. 306). "Hualing's AUV is [░░░░░░░░░░░░░] of all entries within the {period

of review}." *Id.* Thus, even Hualing's proposed approach does not demonstrate "that Hualing's

price is typical." *Id.*

Hualing next argues that average unit values for CBP data should be considered only in

proceedings involving simple commodity products, and not for the "specialty" cabinets produced

by Hualing. Pl. Brief at 29-30. Commerce explained, however, that the average-unit-value

comparison was the best comparison approach because the average unit value "includes all types

of subject merchandise." IDM at 12 (citing Prelim. *Bona Fides* Mem. at Attachment I (C.R. 127,

P.R. 257)). Although the subject merchandise included "wide-ranging variations in raw material

types," and "different types of subject merchandise," Commerce explained that its approach

represents "a large sample that is representative of the average per-unit price of subject

merchandise from China during the {period of review}." IDM at 12 (citation omitted). By

contrast, Hualing's proposal of comparing "single AUVs from ranged data points" is not

PUBLIC VERSION

representative of the subject merchandise, and does "not capture the average per-unit price of subject merchandise."  IDM at 12.

Hualing also argues (Hualing Br. at 29-30) that Commerce "reversed itself" in the *Final Results*, compared with its statement in the *Preliminary Results* that broad-based averages based on CBP data "do not account for differences in the sale prices for different types of kitchen cabinets."  *See, e.g.*, Prelim. *Bona Fides* Mem. at 5 (C.R. 127, P.R. 257).  There was no such "reversal."  In both the *Preliminary* and *Final Results*, Commerce applied the broad-based average derived from CBP data and determined that Hualing's pricing was atypical.  Prelim. *Bona Fides* Mem. at 4-6 (C.R. 127, P.R. 257); IDM at 12.  There is no "reversal" in Commerce's recognition that the values derived from the CBP data reflected broad-based averages rather than particular characteristics associated with Hualing's merchandise.[10]

In any event, Hualing has not demonstrated that the purportedly "specialty" nature of its merchandise supports its arguments regarding pricing.  *See* IDM at 13, 20.  "Hualing conced{ed} in its case brief that ADA designation and sizing of the cabinets has no bearing on the commercial reasonableness of its sale because 'all cabinet production uses the same processes and equipment.'"  IDM at 13 (citing Hualing Case Br. at 37 (C.R. 138, P.R. 281)); *see also* Hualing Voluntary Supp. Questionnaire, Att. II (Feb. 24, 2021 SQR), at 5-6, Exhibit SA-4 (Dec. 30, 2021) (C.R. 118-119, P.R. 211) (stating "[ ███████ ] cabinets actually have the same production process as standard types of cabinets").  Substantial evidence supports Commerce's determination that "there is nothing on the record indicating that ADA cabinets are priced so

---

[10]  Notably, Commerce has the opportunity to reconsider its reasoning in the preliminary results before issuing the final results; as such, there would be no error in the final results, *even if* Commerce had changed its decision from the preliminary results.  In this case, however, Commerce did not change its reasoning.

differently from standard cabinets that it is incorrect to compare Hualing's price to the price of other cabinets."  IDM at 13.

Ultimately, Hualing's challenge to Commerce's broad-based average analysis is nothing more than a disagreement with Commerce's chosen methodology for assessing whether a sale's pricing is "atypical."  Because the statute does not mandate a particular approach in this area, "Commerce 'may perform its duties in the way it believes most suitable.'"  *JBF RAK LLC*, 790 F.3d at 1363 (quoting *U.S. Steel Grp. v. United States*, 96 F.3d 1352, 1362 (Fed. Cir. 1996)). Hualing has not demonstrated that Commerce's approach is unreasonable, and, thus, Commerce's methodology should be sustained.

<blockquote>ii.   Commerce Reasonably Compared The Pricing Of Hualing's Sale With Separate Rate Applicants, The Mandatory Respondent, And Hualing's <u>Domestic Sales, As Confirmation That Hualing's Pricing Was Atypical</u></blockquote>

Commerce also found "that Hualing's sales price is atypical when compared to the separate rate respondents' and the mandatory respondent's prices," and when compared to Hualing's "domestic and third country sales made during the {period of review}."  IDM at 12; *see also* Prelim. *Bona Fides* Mem. at 5-6 (C.R. 127, P.R. 257).  Hualing argues that Commerce was precluded from performing this comparison because "the wide-ranging variations of . . . raw material, types, including ADA, and styles make it impossible—without adjustment—to fairly compare prices with other separate rate applicants or the mandatory respondent."  Hualing Br. at 32.

As an initial matter, Hualing erroneously claims that "Commerce admits" such variations "make it impossible—without adjustment—to fairly compare prices" between Hualing's sale and "other separate rate applicants or the mandatory respondent."  *See* Hualing Br. at 32.  To the contrary, Commerce determined that "nothing on the record indicat{ed} that ADA cabinets are

priced so differently from standard cabinets that it is incorrect to compare Hualing's price to the price of other cabinets." IDM at 13; *see also id.* (quoting Hualing Case Br. at 37 (C.R. 138, P.R. 281)) (explaining that "all cabinet production uses the same processes and equipment").

Hualing nonetheless argues that "the other separate rate applicants and mandatory respondent exclusively sold [████] products, whereas Hualing sold a [████] product," thus preventing any "direct comparisons" between the two. Hualing Br. at 33. Hualing insists that "cabinets made from [████████████████████████████] cannot be compared with [████] cabinets [████████] is a primary feature." *Id.* at 34.

These arguments amount to mere disagreement with Commerce's findings. Specifically, Commerce conducted a cost comparison between the mandatory respondents' [████████ ████████] wood cabinets and Hualing's [████████] cabinets, finding that the cost difference did not justify Hualing's vastly [████] price. Prelim. *Bona Fides* Mem. at 5-6 (C.R. 127, P.R. 257) (citing Qufu Xinyu Section C&D Questionnaire Response, Exhibit C-1 (Nov. 10, 2021) (C.R. 89-90, P.R. 205); Hualing Section C&D Questionnaire Response, at Exhibit C-1 (Sept. 17, 2021) (C.R. 74, P.R. 159)). As Commerce explained,"{t}he percent difference between Hualing's and the mandatory respondent's average cost of wood material inputs and [████████] for their [████] cabinets is [████] percent." Final *Bona Fides* Mem. at 4 (C.R. 142, P.R. 306) (citation omitted); *see also id.* (citing Qufu Xinyu Second Supp. Questionnaire Response, at Exhibit SQ2-1 (Apr. 22, 2022) (C.R. 124, P.R. 242)). By contrast, the gross unit price of the mandatory respondent's [████] cabinets was [████████████], compared with [████████████] for Hualing's [████████████]." *Id.*[11] Substantial evidence thus

---

[11]  Hualing states that it argued in its case brief that Commerce "used the wrong HTS . . . for [████]," Hualing Br. at 33, but fails to dispute Commerce's explanation in the IDM that its

supports Commerce's finding that "the cost and sales data" in this review do not substantiate this

"[███] pricing differences between the mandatory respondent's [███] cabinets and Hualing's

[███] cabinets." *Id.* at 4-5.[12]

      Hualing also argues—incorrectly—that, in the *Final Results*, Commerce "dropped its

comparison" between Hualing and the separate rate applicants. Hualing Br. at 33. To the

contrary, as in the *Preliminary Results*, Commerce continued to find that "Hualing's sales price

is atypical when compared to the separate rate respondents' . . . prices during the {period of

review}." IDM at 12 (citing Prelim. *Bona Fides* Mem. at Attachment 1). Commerce also

rejected Hualing's claim that the [███] separate rate respondents had [███] AUVs than

Hualing. *See* Final *Bona Fides* Mem. at 2 (C.R. 142, P.R. 306) (citing Hualing Case Br. at 19 &

Exhibit 1 (C.R. 138, P.R. 281)). Commerce found that the "overall AUV of subject

merchandise" for these [███] separate rate respondents was "[██████████]" than Hualing's

AUV of [██████████]." *Id.* at 3 (citing Att. 1). Further, Hualing's argument that the AUVs

for other mandatory and separate rate respondents "*would . . . be* atypical" compared with a

separate rate respondent selected by Hualing is beside the point; Hualing fails to explain why a

single separate rate respondent [██████████] provides any appropriate baseline for

comparison. Hualing Br. at 33 (emphasis added).

      Hualing next challenges Commerce's comparison with Hualing's domestic sales,

claiming that this comparison "confirms the wide variation" in pricing of subject merchandise,

---

cost analysis applied "{r}egardless of the HTS code used to value the different wood inputs."
IDM at 12. By failing to raise any such argument in its opening brief, Hualing has waived it.

    [12] Commerce showed its work for these calculations, accounting for "the consumption
amount of all wood inputs and other direct materials consumed by both the mandatory
respondent and Hualing," finding that "the cost of materials difference does not account for the
price difference" between the two. IDM at 12-13 (citing Final *Bona Fides* Mem. at 3-4 &
Attachment 2 (C.R. 142, P.R. 306)).

"such that comparing non-similar products is problematic." Hualing Br. at 34. Again, this argument reflects nothing more than disagreement with Commerce's findings. Hualing fails to dispute the record evidence supporting Commerce's findings that "{t}he price of Hualing's U.S. sale of cabinets, [███████████████████████████████████████ ███████████████████████]." Final *Bona Fides* Mem. at 3 (citing Hualing Voluntary Supp. Questionnaire, Att. II (Feb. 24, 2021 SQR), at 1, 8 & Exhibits SA-1, SA-2, SC-2 (Dec. 30, 2021) (C.R. 118-119, P.R. 211)).[13]

  iii. <u>Hualing's Remaining Arguments Regarding Pricing Are Unpersuasive</u>

  Hualing's remaining arguments do not undermine Commerce's determination that the pricing of Hualing's sale was atypical. Hualing disagrees with Commerce's review of evidence from Hualing's U.S. importer regarding sales made between [███████████]. Hualing Br. at 34-36. Hualing is wrong in claiming that Commerce "did not address this evidence." *Id.* In the *Final Results*, Commerce found "the U.S. importer's resale price was atypical and not indicative of future commercial practices." IDM at 18-19 (discussing "whether the goods were resold at a profit") (capitalization altered). As Commerce explained, "{t}he resale price of Hualing's cabinets was on average [███] percent more than the prices reported by the importer between 2018 and 2020." Final *Bona Fides* Mem. at 5 (C.R. 142, P.R. 306).

  Finally, Hualing claims that a price quote from a U.S. producer substantiates Hualing's price. Hualing Br. at 35. Commerce rejected this argument, explaining that the pricing by a U.S. producer was not relevant to "the typical price of cabinets produced in China and sold on the

---

  [13] Hualing also quibbles with Commerce's use of the term "identical" in describing Hualing's domestic sales. *See* Hualing Br. at 34. In context, Commerce's meaning was clear; "Hualing's U.S. sale price is atypical when compared to its sales domestic sales of [█████ █████████████████]." *See* Final *Bona Fides* Mem. at 3 (C.R. 142, P.R. 306) (emphasis added).

U.S. market," as relevant in the *bona fides* analysis.  IDM at 13.  Moreover, Commerce

explained that "the U.S. producer's single price quote is not a sales invoice and, therefore, not

probative in determining the U.S. market price for ADA cabinets."  IDM at 13 (discussing

*TTPC*, 366 F. Supp. 2d at 1254).  Hualing fails to challenge this independent basis supporting

Commerce's finding that the price quote from the U.S. producer was not probative in the *bona*

*fides* analysis.

      B.      Commerce Reasonably Determined That Hualing's Single Sale Was Not Made In
            Commercial Quantities

Commerce next determined that the circumstances of Hualing's single sale indicated that

it "was not made in commercial quantities and does not indicate the sale was *bona fide*."  IDM at

14-15.  Commerce provided three primary bases in support of this finding.  First, Commerce

explained that "Hualing did not make subsequent sales to the same customer or other customers

in the U.S. market."  Prelim *Bona Fides* Mem. at 6 (C.R. 127, P.R. 257) (citing Hualing Section

A Questionnaire Resp. at 16, Exhibit IMP-1 (Sept. 1, 2021) (C.R. 67, 69, P.R. 147)).  Second,

"Hualing's sales of similar merchandise to its domestic and third country markets indicates that

its single 'specialty' cabinets sale to the United States is atypical of its business practice."  IDM

at 15.[14]  Third, Hualing's "U.S. importer stated that it had never imported the 'specialty' cabinets

either from China or another country, or ever sourced them from a U.S. producer."  IDM at 15.[15]

---

    [14]  *See also* Prelim. *Bona Fides* Mem. at 6 (C.R. 127, P.R. 257) (Hualing Voluntary Supp.
Questionnaire, Att. II (Feb. 24, 2021 SQR), at 1, 8 & Exhibits SA-1, SA-1, SC-2 (Dec. 30, 2021)
(C.R. 118-119, P.R. 211)) (stating that Hualing was [＿＿＿＿＿] producer of cabinets and
"[＿＿＿] sales of cabinets to its reported third country markets" in [＿＿＿＿＿＿＿＿
＿＿＿]").

    [15]  *See also* Hualing Voluntary Supp. Questionnaire, Att. IV (Aug. 3, 2021 SQR), at 1
(Dec. 30, 2021) (C.R. 121, P.R. 211) (stating that the importer "ha{d} no prior purchases of
[＿＿] cabinets before the purchase of [＿＿] cabinets from China"); Hualing Voluntary Supp.
Questionnaire, Att. II (Feb. 24, 2021 SQR), at 5 (C.R. 118, P.R. 211) (stating that Hualing had

Hualing insists that its sale was made in commercial quantities because selling "[████]

sets of kitchen cabinets is not atypical when compared to other sale quantities" in this review.

Hualing Br. at 36 (quoting Prelim. *Bona Fides* Mem. at 6 (C.R. 127, P.R. 257)).  However,

Commerce reasonably considered other circumstances of Hualing's single sale in its totality-of-

the-circumstances analysis.  Although "a single sale is not inherently commercially

unreasonable, it will be carefully scrutinized" to avoid any "unfair{} benefit from

unrepresentative sales."  *See TTPC*, 29 Ct. Int'l Trade at 275, 366 F. Supp. 2d at 1263 (citation

omitted) (discussing the bona fides analysis in a new shipper review).  Thus, Commerce

reasonably considered additional sales information (and the lack of sales) by Hauling and its U.S.

importer in evaluating whether Hualing's single sale was made in commercial quantities.  *See*

IDM at 15.

Hualing nonetheless argues that "a single sale is not a statutory factor for determining

whether a sale is *bona fide*."  Hualing Br. at 37 (citing *Huzhou Muyun Wood Co. v. United*

*States*, 324 F. Supp. 3d 1364, 1375 (Ct. Int'l Trade 2018)).  However, the Court in *Huzhou*

*Muyun* acknowledged "that single sales should be 'carefully scrutinized to ensure that new

shippers do not unfairly benefit from unrepresentative sales.'"  *See* 324 F. Supp. 3d at 1375

(citing, *TTPC*, 366 F. Supp. 2d at 1262); *see also* IDM at 14-15.  The presence of only a single

sale "leaves the door wide to the possibility that the sale may not, in fact, be typical, and any

resulting antidumping duty calculation would be based on unreliable data."  IDM at 14-15

(quoting *TTPC*, 366 F. Supp 2d at 1263).

---

not produced or sold any [████] cabinets for its domestic and export markets before its sale of
these cabinets during the period of review).

Hualing next challenges Commerce's consideration of Hualing's domestic and third

country sales quantities, as well as sales by the U.S. importer.  Hualing Br. at 37-38.  But

Commerce explained that it "regularly compares respondents' U.S. sales quantities to their

domestic or third country sales to determine if the U.S. sale under review was typical, and if the

U.S. importer's purchase is typical of their business practices."  IDM at 15 (citing *Mattresses*

*from China: Rescission of 2020 Antidumping Duty New Shipper Review*, 86 Fed. Reg. 31,275

(Dep't of Commerce June 11, 2021), and accompanying IDM, at 13; *Tapered Roller Bearings*

*and Parts Thereof, Finished and Unfinished, from China: Final Results and Partial Rescission of*

*Review; 2017–2018*, 85 Fed. Reg. 9,459 (Dep't of Commerce, Feb. 19, 2020)).  Considering

these factors, Commerce reasonably determined "that Hualing's and the U.S. importer's own

business practices indicate that Hualing's single sale of 'specialty' cabinets was not made in

commercial quantities."  IDM at 15.

C.      Substantial Evidence Supports Commerce's Finding That The Timing Of
        Hualing's Sale Is Not Indicative Of A *Bona Fide* Sale

Commerce then analyzed the timing of Hualing's single sale, finding that the

timing of the sale was not indicative of a bona fide sale.  IDM at 16.  In explaining this

finding, Commerce described discussions between the U.S. importer and Hualing during

the investigation, regarding shipping "specialty kitchen cabinets" to the United States.

IDM at 16 (citing Prelim. *Bona Fides* Mem. at 7 (C.R. 127, P.R. 257)).  "According to

Hualing, one of the owners visited the United States in June 2019" and held discussions

"with the U.S. importer about shipping 'specialty kitchen cabinets.'"  Prelim. *Bona Fides*

Mem. at 7 (C.R. 127, P.R. 257) (citing Hualing Section A Questionnaire Resp. at 24

(C.R. 67, P.R. 147)).  At the time Hualing did not produce cabinets for its domestic

market, and did not make its first domestic sale of cabinets until a couple months later, in

August 2019.  *Id.* (citing Hualing Voluntary Supp. Questionnaire, Att. II (Feb. 24, 2021

SQR), at 3 (Dec. 30, 2021) (C.R. 118, P.R. 211).  In June 2020—after the antidumping

duty order was imposed in April 2020—the U.S. importer "inquired with Hualing to

purchase [█████████████]."  *Id.* (Hualing Section A Questionnaire Resp. at 24 (C.R.

67, P.R. 147)).  Overall, Commerce found "that the specific timing of the single sale . . .

is not indicative of a *bona fide* sale."  Prelim. *Bona Fides* Mem. at 6 (C.R. 127, P.R. 257).

Instead, the totality of factors, including the "timing of the U.S. importer's and Hualing's

planning to ship expensive cabinets after the filing of the petition and imposition of the

Order, indicates that the sale is an artificial export involving an artificially set price."

IDM at 16 (citations omitted).

Hualing disagrees with Commerce's weighing of this factor, claiming that the

"beginning and end" of the factor should have been Commerce's statement that "the

timing of the sale by itself does not indicate that a sale is not *bona fide*."  Hualing Br. at

39 (quoting IDM at 16).  However, Commerce reasonably considered details about the

timing of the sale as part of the totality of the circumstances supporting its determination

that Hauling's sales was not *bona fide*.  *See TTPC*, 275, 366 F. Supp. 2d at 1263

(sustaining Commerce's evaluation of "the totality of the circumstances" regarding the

*bona fides* nature of the sale).

Hualing's reliance on other references to the record--including the U.S. importer's

outreach to other domestic producers and the circumstances of the sales by other separate

rate respondents—does not undermine the substantial evidence supporting Commerce's

findings.  *See* Hualing Br. at 39-40.  "The possibility of drawing two inconsistent

conclusions from the evidence does not prevent {Commerce's} finding from being

supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620

(1966).   Substantial evidence supports Commerce's finding that "the overall

circumstances, including the timing of Hualing's single sale, raise considerable and

objective questions regarding the *bona fide{s}* nature of the sale."  IDM at 17.

> D.      Substantial Evidence Supports Commerce's Finding That The Expenses Incurred
>         By The U.S. Importer Further Indicate That Hualing's Sale Was Not *Bona Fide*

Commerce then analyzed the expenses arising from Hualing's single sale, finding that

"the totality of circumstances warrant consideration" of the U.S. importer's payment of

"significant" antidumping and countervailing duty cash deposits paid to CBP for the entry of

Hualing's merchandise.  IDM at 18.  Commerce reasonably determined that such expenses raised

"considerable questions regarding the *bona fide{s}* nature of the sale."  IDM at 17-18 (citing

Prelim. *Bona Fides* Mem. at 7-8 (C.R. 127, P.R. 257).[16]

Hualing challenges Commerce's consideration of antidumping and countervailing duties,

arguing that it contradicts Commerce's "long-standing policy and practice . . . not to treat

estimated or final {ADD/CVD} as import duties or costs" that may be deducted from

constructed export price under 19 U.S.C. § 1677a(d)."  Hualing Br. at 41 (quoting *Hoogovens*

*Staal BV v. United States*, 4 F. Supp 2d 1231, 1220 (Ct. Int'l Trade 1998)).  As Commerce

explained, however, "{i}n *Hoogovens*, the CIT specifically explained that it is Commerce's

practice not to deduct cash deposits as expenses *in the calculation of dumping margins*."  IDM at

18 (citing *Hoogovens*, 4 F. Supp. 2d at 1220) (emphasis added).  In this case, by contrast,

---

[16]  As Commerce explained, the U.S. importer paid "significant" expenses associated
with the sale, including antidumping duties of "[     ] percent and $[        ]," and
countervailing duties of "[     ] percent and $[        ]."  Prelim. *Bona Fides* Mem. at 8
(C.R. 127, P.R. 257) (citing Hualing Voluntary Supp. Questionnaire, Att. IV (Aug. 3, 2021
SQR), at Exhibit S-5 (Dec. 30, 2021) (C.R. 121, 122, P.R. 211)).

Commerce is determining whether Hualing's sale was *bona fide*, not calculating a dumping margin.

Hualing further states that it "is unaware of a single case" in which Commerce considered antidumping and countervailing duty cash deposits in its expense analysis. *Id.* at 40. This argument misses the point of the *bona fide* sale analysis. As explained in *Huzhou Muyun Wood Co.* (a case cited by Hualing), "by definition, totality of the circumstances analyses are specific to particular cases, and the impact of various factors in determining whether a transaction is *bona fide* may vary depending on the circumstances of the transaction." 324 F. Supp. 3d at 1376. Thus, Commerce has discretion to weigh the facts of the particular case "to ensure that a producer does not unfairly benefit from an atypical sale to obtain a lower dumping margin than the producer's usual commercial practice would dictate." *Id.*

Consistent with this approach, Commerce explained that the circumstances of this review warrant consideration of the U.S. importer's payment of cash deposit rates for Hualing's single sale. IDM at 18. As Commerce explained, "Hauling has never produced similar 'custom' cabinets and the U.S. importer has never purchased similar 'custom' cabinets." IDM at 18. Yet, "the U.S. importer decided to incur significant {antidumping and countervailing duties} for the entry of Hualing's cabinets." IDM at 18 (citing Prelim. *Bona Fides* Mem. at 7-8 (C.R. 127, P.R. 257)). Considering these factors, Commerce reasonably determined that "the totality of circumstances warrant consideration of the significant {antidumping and countervailing duty} cash deposits paid to CBP for the entry of Hualing's merchandise." IDM at 18 (citing *Am. Silicon Techs. v. United States*, 110 F. Supp. 2d 992, 995 (Ct. Int'l Trade 2000)).

E.     Even If The Goods Were Resold At A Profit, The Resale Price Was Atypical And
       Not Indicative Of Future Commercial Practices

Commerce next considered whether the subject merchandise involved in Hualing's single

sale was resold in the United States at a profit.  IDM at 18-19.  Commerce explained that the

U.S. importer made a profit only if Commerce excluded consideration of the importer's payment

of antidumping and countervailing duty cash deposits.  *Id.*  "{T}aken together with other

factors," Commerce found that this factor "does not weigh in favor of finding the sale to be *bona*

*fide*."  IDM at 19.

Substantial evidence supports Commerce's findings.  Although the U.S. importer's sale

was profitable if antidumping and countervailing duty cash deposits were excluded, Commerce

found that the U.S. importer's resale price was "atypical of the U.S. importer's business

practices."  IDM at 19.  "The resale price of Hualing's cabinets was on average [█████] percent

more than the prices reported by the importer between 2018 and 2020."  Final *Bona Fides* Mem.

at 5 (C.R. 142, P.R. 306) (citing Prelim. *Bona Fides* Mem. at 8 & Attachment 3 (C.R. 127 P.R.

257)).  Of the "[████] sales reported by the importer for the two-year period, the resale of

Hualing's cabinets was the [████████████████]."  *Id.*  Further, when Commerce asked the

U.S. importer for additional information regarding the sale, the importer responded "that it had

never purchased the 'specialty' cabinets from any source."  IDM at 19-20.  Finally, neither

Hualing nor its U.S. importer provided "substantiating cost or pricing data to support the typical

price of ADA cabinets."  IDM at 20; *see also* Prelim. *Bona Fides* Mem. at 10 (C.R. 127, P.R.

257) (citing Hualing Section A Questionnaire Resp. at 25 (Sept. 1, 2021) (C.R. 67, 69, P.R. 147);

Hualing Voluntary Supp. Questionnaire, Att. II (Feb. 24, 2021 SQR), at 6, (Dec. 30, 2021) (C.R.

118-119, P.R. 211); Hualing Voluntary Supp. Questionnaire, Att. IV (Aug. 3, 2021 SQR), at 1-3 (Dec. 30, 2021) (C.R. 121, 122, P.R. 211)).[17]

Hualing argues that Commerce should have "ended the analysis of this factor" after determining that "the importer made a profit" once antidumping and countervailing duties were excluded.  Hualing Br. at 42.  In this totality-of-the-circumstances inquiry, however, Commerce reasonably explained why additional facts related to the sale were relevant to this factor of the *bona fides* analysis.  *See* IDM at 19-20.

Hualing further argues that Commerce "ignored" the importer's explanation for why custom ADA cabinets were more expensive than other sales.  Hualing Br. at 43 (citing Hualing Voluntary Supp. Questionnaire, Att. IV (Aug. 3, 2021 SQR), at 1 (Dec. 30, 2021) (C.R. 121, P.R. 211)).  Commerce did not ignore such information, but reasonably explained that the record lacked any "*substantiating* cost or pricing data," IDM at 20 (emphasis added).  It is not unreasonable for Commerce to require substantiating cost and pricing data, particularly in light of the U.S. importer's lack of prior experience in purchasing such custom [ ] cabinets.  *See* Hualing Voluntary Supp. Questionnaire, Att. IV (Aug. 3, 2021 SQR), at 3 (Dec. 30, 2021) (C.R. 121, P.R. 211) (stating that the importer "ha{d} no prior purchases of [ ] cabinets before the purchase of [ ] cabinets from China").  Nor does Hualing demonstrate any error in

---

[17]  Notably, the record supports Commerce's finding that the U.S. importer's sale would be profitable only if the cost of paying antidumping and countervailing duty cash deposits was excluded.  Specifically, "Hualing's price to the U.S. importer for the [ ] sets of [ ] cabinets was $[ ]," and "{t}he U.S. importer reported reselling the merchandise for a [ ]," with "a profit of $[ ]."  Prelim. *Bona Fides* Mem. at 8 (C.R. 127, P.R. 257) (citing Hualing Voluntary Supp. Questionnaire, Att. IV (Aug. 3, 2021 SQR), at Exhibit S-5 (Dec. 30, 2021) (C.R. 121, 122, P.R. 211); Hualing Section A Questionnaire Resp. at Exhibit IMP-1 (C.R. 67, 69, P.R. 147)).  By contrast, the antidumping and countervailing duty cash deposits paid by the U.S. importer totaled "$[ ]" and "$[ ]," respectively.  *Id.*

Commerce's reasoning that the U.S. producer's price quote "does not support either Hualing's sale price or the U.S. importer's resale price." IDM at 20. As discussed above, *supra* Section III(A)(iii), Commerce reasonably determined that "the U.S. producer's price quote does not demonstrate the typical price of Chinese-produced 'custom' cabinets in the U.S. market." IDM at 20.

Finally, Hualing disagrees with Commerce's weighing of the facts, arguing that pricing "on the higher end" of the importer's business practice and the U.S. importer's [⬛⬛⬛⬛⬛] mark-up were commercially reasonable. Hualing Br. at 51. As explained above, however, simply because Hualing would have weighed the facts differently does not mean that Commerce's findings are unsupported by substantial evidence. *Consolo*, 383 U.S. at 620. Commerce's findings are supported by the record and should be sustained.

### F. The Overall Circumstances Of The Single Sale Indicate The Sale Was Not Made At Arms-Length

Commerce then analyzed the negotiations surrounding Hualing's single sale. IDM at 21. Although Hualing's sale terms were "not unusual," Commerce determined that "the negotiations for Hualing's single sale were not based on the independent interests of the parties involved," and instead reflected that the sale was "only made for the purpose of establishing an artificial antidumping deposit rate, without regard for commercial reasonableness." IDM at 21.

Hualing claims that, in reaching this decision, Commerce contradicted its preliminary decision. Hualing Br. at 44. In the preliminary *bona fide*s memorandum, Commerce stated that the course of negotiations between Hualing, its U.S. importer, and the U.S. customer "raise{d} concerns as to whether the transaction is representative of future commercial practices, but does not weigh{} against finding the sale not an arm's length transaction or non-*bona fide*." Prelim. *Bona Fides* Mem. at 9 (C.R. 127, P.R. 257). There is no contradiction between the preliminary

and final results—both of which found that certain circumstances of the sale were not indicative of future commercial selling practices. *Compare id. with* IDM at 21 (finding that "negotiations for Hualing's single sale," when "considered with the totality of the circumstances, indicate the sale is not indicative of future commercial selling practices and not *bona fide*"). This core finding accords with the purpose of the *bona fide* sale analysis, which focuses on "ensur{ing} that a producer does not unfairly benefit from an atypical sale to obtain a lower dumping margin *than the producer's usual commercial practice would dictate*." *See Huzhou Muyun Wood Co.*, 324 F. Supp. 3d at 1376 (emphasis added).

In any event, Hualing's argument of a claimed inconsistency between the preliminary and final results is beside the point. Even if Commerce had changed its reasoning between the preliminary and final results, such a change would be permissible. The question is whether Commerce's *final* decision is supported by substantial evidence and in accordance with law. *See* 19 U.S.C. § 1516a(a)(2)(B)(iii) (listing "{a} final determination" in an administrative review pursuant to 19 U.S.C. § 1675 as a "reviewable" determination in this Court).

Commerce's final decision is lawful and supported by substantial evidence. As Commerce explained, numerous facts in the record showed "that the overall circumstances regarding the sale negotiations between Hauling and the U.S. importer call into question the *bona fides* nature of the sale and whether the sale was an arm's-length transaction." IDM at 21. These circumstances include that (1) "Hualing has never produced cabinets or 'specialty' cabinets for the U.S. market and the U.S. importer has never previously purchased the purported 'specialty' cabinets," (2) the "artificially high price paid by the U.S. importer," and (3) the planning by Hualing and its U.S. importer in advance of shipping "specialty" cabinets that purportedly cost "two to three" times the price of other cabinets to the United States. IDM at 21

42

(citing, *e.g.*, *Hebei New Donghua Amino Acid Co.*, 374 F. Supp. 2d at 1343).  Overall, Commerce found that "the negotiations for Hualing's single sale were not based on the independent interests of the parties involved and only made for the purpose of establishing an artificial antidumping deposit rate."  IDM at 21.  Thus, as in *Hebei New Donghua Amino Acid Co.*, Commerce reasonably determined that the facts on the record "suggest{ed} that {Hualing's} only purpose was to secure an advantageous cash deposit rate."  374 F. Supp. 2d at 1343.

G.     Commerce Reasonably Determined That Other Relevant Factors—And The Totality Of The Circumstances—Support Finding The Sale Is Not *Bona Fide*

Finally, Commerce considered "other relevant factors" in determining whether Hualing's single sale was "likely to be typical of those the exporter or producer will make after completion of the review."  IDM at 10 n.39 & 21 (quoting 19 U.S.C. § 1675(a)(2)(B)(iv)(VII)) (capitalization altered).  Commerce determined that "Hualing's single sale of purportedly more 'expensive' and 'unique' cabinets is not representative of Hualing's future sales of subject merchandise (*i.e.*, standard RTA cabinets and drawer boards) and not an appropriate basis for a dumping margin (in this case, a separate rate)."  IDM at 23.  Specifically, Commerce found that numerous factors "suggest that the sale is not indicative of normal business practices," including (1) "the high price and the commercial quantity"; (2) "the timing of the sale"; (3) "the resale price"; (4) "the nature of the arm's-length transaction"; and (5) "other relevant factors such as the single sale made during the {period of review} and the "specialty" nature of the product."  IDM at 23.  "Taken together, {Commerce found} that this sale is unlikely to be representative of Hualing's future sales to the U.S. importer or other customers."  IDM at 23.

Hualing points to Commerce's statement that certain factors "do not make the single sale 'commercially unreasonable for Hualing and the U.S. importer,'" IDM at 23, and argues that

PUBLIC VERSION

"Commerce fails to explain how a sale can be found to not be 'commercially unreasonable' while at the same time exhibiting atypical prices, future selling practices, or form an inappropriate basis for a dumping margin."  Hualing Br. at 45.  There is no inconsistency. Commerce explained that "the price, commercial quantity, timing, profit, and arm's-length nature of Hualing's sale demonstrate that Hualing's sale was not *bona fide* and not representative of future commercial selling practices."  IDM at 23.  Although these factors did not necessarily make the sale commercially unreasonable for Hualing and its U.S. importer—in that, for example, Hualing and the U.S. importer "incurred a profit on the sale," *id.*—Commerce explained that the sale was "only made for the purpose of establishing an artificial antidumping deposit rate, without regard for commercial reasonableness."  *See, e.g.*, IDM at 21 (citing, *e.g.*, *Hebei New Donghua Amino Acid Co.*, 374 F. Supp. 2d at 1343).  Commerce's "*bona fide*s analysis is concerned with whether the sale is indicative of future commercial selling practices and if the single sale is an appropriate basis for an administrative review."  IDM at 23.  Because Commerce found that Hualing's single sale did not satisfy that test, Commerce reasonably rescinded the review with respect to Hualing.  IDM at 23.

CONCLUSION

For these reasons, we respectfully request that the Court deny Hualing's motion for judgment on the administrative record, sustain Commerce's final results, and enter judgment for the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

/s/ Tara K. Hogan by Claudia Burke
TARA K. HOGAN
Assistant Director

OF COUNSEL                          /s/ Emma E. Bond
                                    EMMA E. BOND
ALEXANDER FRIED                     Trial Attorney
Attorney                            Commercial Litigation Branch
Office of the Chief Counsel         U.S. Department of Justice
    for Trade Enforcement & Compliance   P.O. Box 480
U.S. Department of Commerce         Washington, DC 20044
                                    (202) 305-2034
                                    Email: emma.e.bond@usdoj.gov

August 24, 2023                     Attorneys for Defendant

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this brief contains no more than 13,530 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

<u>/s/ Emma E. Bond</u>

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JANE A. RESTANI, JUDGE

_____
                                        )
DALIAN HUALING WOOD CO., LTD.,          )
                                        )
                    Plaintiff,          )
                                        )        Court No. 22-00334
         v.                             )
                                        )
UNITED STATES,                          )
                                        )
                    Defendant,          )
                                        )
         and                            )
                                        )
AMERICAN KITCHEN CABINET                )
ALLIANCE,                               )
                                        )
                    Defendant-Intervenor. )
_____ )

## **ORDER**

Upon consideration of the motion for judgment upon the agency record filed by plaintiffs,

all responses thereto, the administrative record, and other pertinent papers, it is hereby

ORDERED that the motion is DENIED; and it is further

ORDERED that the Department of Commerce's final results in this matter are sustained;

and it is further

ORDERED that judgment is entered in favor of the United States.


Dated: _____, 2023                _____
         New York, NY                            JUDGE