Slip Op. 23-179

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| DALIAN HUALING WOOD CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> AMERICAN KITCHEN CABINET ALLIANCE, <br><br> Defendant-Intervenor. | Before: Jane A. Restani, Judge <br><br> Court No. 22-00334 <br><br> **Public Version** |

# **OPINION AND ORDER**

[Commerce's Final Results in the Administrative Review of Commerce's antidumping duty order on wooden cabinet and vanities and components thereof from the People's Republic of China are sustained.]

Dated: December 18, 2023

Michael S. Holton, Grunfeld Desiderio Lebowitz Silverman & Klestadt, LLP, of Washington DC, argued for plaintiff Dalian Hualing Wood Co., Ltd. With him on the brief was and Jordan C. Kahn.

Emma E. Bond, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for the defendant. With her on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, and Tara K. Hogan, Assistant Director. Of counsel on the brief was Alexander P. Fried, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington DC.

Luke A. Meisner and Michelle R. Avrutin, Schagrin Associates, of Washington DC, argued for defendant-intervenor American Kitchen Cabinet Alliance. With them on the brief was Roger B. Schagrin.

Restani, Judge: Plaintiff Dalian Hualing Wood Co., Ltd. ("Hualing") challenges the decision of the United States Department of Commerce ("Commerce") in the administrative review of the antidumping duty ("AD") order on Wooden Cabinet and Vanities and Components Thereof ("WCV") from the People's Republic of China ("PRC"). <u>Wooden Cabinet and Vanities and Components Thereof from the People's Republic of China: Final Results and Partial Rescission of the Antidumping Duty Administrative Review; 2019-2021</u>, 87 Fed. Reg. 67,674 (Dep't Commerce Nov. 9, 2022) ("<u>Final Results</u>"). Hualing claims that Commerce improperly rejected its lone U.S. sale as not bona fide, contesting both the statutory and evidentiary basis for Commerce's bona fide analysis. The court concludes that Commerce's decision was in accordance with the law and supported by substantial evidence. Hualing's motion for judgment on the agency record is denied. Accordingly, Commerce's <u>Final Results</u> are sustained.

## BACKGROUND

On April 21, 2020, Commerce issued an AD order covering WCV from the PRC. <u>Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China: Antidumping Duty Order</u>, 85 Fed. Reg. 22,126 (Dep't Commerce Apr. 21, 2020). Hualing made a single sale of alleged Americans with Disabilities Act ("ADA") compliant cabinets in June 2020. See <u>Dalian Hualing Wood Co., Ltd. Section A Questionnaire Response & Voluntary Response Request</u> at Attach. 1, 14–16, C.R. 67–71, P.R. 147 (Sept. 1, 2021). Hualing, as a manufacturer and exporter of WCV from the PRC, responded to Commerce's AD order in a few ways.

First, pursuant to 19 CFR § 351.214(b), Hualing requested a new shipper review ("NSR") for the period of review ("POR") of April 1, 2020, through September 30, 2020. <u>Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China: Initiation of</u>

Court No. 22-00334                                                                                              Page 3
**Public Version**

<u>Antidumping Duty New Shipper Review</u>, 85 Fed. Reg. 77,162 (Dep't Commerce Dec. 1, 2020). Commerce initiated the NSR on December 1, 2020. <u>Id.</u>

A few months later, for the same sale Hualing requested an administrative review ("AR") of the AD order for the POR of October 9, 2019, through March 31, 2021, which Commerce also initiated. Letter from Grunfeld, Desiderio, Lebowitz, Silverman, & Klestadt LLP to U.S. Dep't of Commerce, ECF No. 35 (Apr. 30, 2021); <u>see also</u> <u>Initiation of Antidumping and Countervailing Duty Administrative Reviews</u>, 86 Fed. Reg. 31,282 (Dep't Commerce June 11, 2021).

Lastly, Hualing submitted a separate rate application in the AD AR. <u>Dalian Hualing Wood Co., Ltd. Separate Rate Application</u>, C.R. 50–53, P.R. 105 (July 16, 2021).

Commerce responded with a preliminary decision to rescind Hualing's NSR. <u>Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Preliminary Rescission of Antidumping Duty New Shipper Review; 2020</u>, 86 Fed. Reg. 46,178 (Dep't Commerce Aug. 18, 2021). Because Hualing shipped subject merchandise prior to the POR, Commerce ultimately rescinded the new shipper review on November 12, 2021. <u>Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China: Recission of Antidumping Duty New Shipper Review; 2020</u>, 86 Fed. Reg. 62,788 (Dep't Commerce Nov. 12, 2021), and accompanying <u>Issues and Decision Memorandum for the Rescission of the Antidumping Duty New Shipper Review of Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China; 2020</u>, A-570-106, POR 04/01/2020-09/30/2020 at Comment 1 (Dep't Commerce Nov. 12, 2021). This determination is not challenged here.

Meanwhile, Hualing continued to submit information to Commerce in the administrative review. See <u>Dalian Hualing Wood Co., Ltd. Voluntary Section C & D Questionnaire Response</u>,

C.R. 74–76, P.R. 159–160 (Sept. 17, 2021); <u>Dalian Hualing Wood Co., Ltd. Voluntary Supplemental Response</u>, C.R. 118–122, P.R. 211 (Dec. 30, 2021). Based upon this information and the information Hualing submitted as part of the NSR, Commerce gave notice of its intent to rescind the AR with respect to Hualing, finding that its single sale was not bona fide. <u>Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China: Preliminary Results and Partial Recission of the Antidumping Duty Administrative Review; 2019-2021</u>, 87 Fed. Reg. 27,090, 27,092 (Dep't Commerce May 6, 2022); see also <u>U.S. Department of Commerce Memorandum: Preliminary Bona Fides Sale Analysis</u>, C.R. 127, P.R. 257 (May 2, 2022) ("<u>Preliminary Bona Fides Sales Analysis</u>").

That same day, Commerce issued its preliminary findings in the concurrent AR of the countervailing duty ("CVD") order, to which Hualing was a mandatory respondent. <u>Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China: Preliminary Results of Countervailing Duty Administrative Review, Rescission and Intent To Rescind Administrative Review, in Part; 2019-2020</u>, 87 Fed. Reg. 27,099, 27,100 (Dep't Commerce May 6, 2022). In the CVD AR, Hualing was initially assigned a subsidy rate of 16.91% for 2020; Hualing's rate was lowered to 2.78% in the Final CVD Results. <u>Id.</u>; <u>Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China: Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2019-2020</u>, 87 Fed. Reg. 51,967, 51,968 (Dep't Commerce Aug. 24, 2022) ("<u>CVD Final Results</u>").

Hualing challenged Commerce's preliminary results in the AD AR in its administrative case brief. <u>Dalian Hualing Wood Co., Ltd. Administrative Case Brief</u>, C.R. 138–139, P.R. 281 (July 1, 2022). Namely, Hualing claimed Commerce's bona fide sales analysis was "not supported

Court No. 22-00334 Page 5
**Public Version**

by practice, precedent, record evidence and was otherwise unlawful." Id. at 1.  Commerce rejected Hualing's arguments, however, and published its Final Results, rescinding the AR with respect to Hualing based upon the determination that Hualing made no bona fide sales during the POR.  Final Results, 87 Fed. Reg. at 67,675.  Because Hualing had not previously qualified as independent of China, Hualing defaulted to the China-wide AD assessment rate of 251.65%.  See id. at 67,675–76.  Hualing appealed the Final Results to this court.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2).  The court sustains Commerce's results of an administrative review of an AD duty order unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law[.]" 19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

Hualing primarily challenges Commerce's Final Results on three grounds.  First, Hualing notes that Commerce, in the parallel CVD AR, calculated an individual CVD rate based upon the same sale that Commerce found to be non-bona fide in the AD AR.  This apparent inconsistency, Hualing claims, violates 19 U.S.C. § 1675(a)(2)(B)(iv) (2016)—"[s]tatutorily, the same sale cannot be bona fide in one proceeding and not the other . . . ."  Pls. Mot. For J. on the Agency R. at 13, ECF No. 26 (June 22, 2023) ("Hualing Br.").  Second, Hualing contests Commerce's decision to conduct a bona fide analysis of Hualing's sale in the AD AR.  According to Hualing, Commerce arbitrarily departed from its "well-established practice" to not perform a bona fide analysis on sales made by separate rate applicants who are not mandatory respondents in an AR.

Court No. 22-00334                                                                                                          Page 6
**Public Version**

Id. at 13.  Last, Hualing challenges Commerce's bona fide analysis itself as unsupported by substantial evidence.  Id. at 24.

The United States ("Government") argues that Hualing failed to exhaust its first two claims at the administrative level, and that this court should decline to hear them.  Def.'s Resp. to Pls. R. 56.2 Mot. For J. on the Agency R. at 17–22, ECF No. 31 (Aug. 24, 2023) (quoting Qingdao Sea-Line Trading Co., v. United States, 766 F.3d 1378, 1388 (Fed. Cir. 2014) ("[A] party's failure to raise an argument before Commerce constitutes a failure to exhaust its administrative remedies.")).  Hualing replied that it properly contested Commerce's seemingly inconsistent results in the AD and CVD reviews, and Commerce's authority to conduct a bona fide analysis in the AR, respectively, in its administrative case brief.  Pls. Reply Br. at 1, ECF No. 33 (Sept. 21, 2023) ("Hualing Reply Br.").

In an action challenging Commerce's final results in an unfair trade matter, the court "shall, where appropriate, require the exhaustion of administrative remedies."  28 U.S.C. § 2637(d).  In this context, whether a party is required to exhaust its administrative remedies is within the court's sound discretion.[1]  Consistent with other courts, the Federal Circuit has recognized a "pure legal question" exception to the exhaustion doctrine.  See, e.g., Agro Dutch Indus., 508 F.3d at 1029 (citations omitted).  Thus, "where the issue for the court is a 'pure question of law' that can be addressed without further factual development or further agency exercise of discretion," as here, "requiring exhaustion may serve no agency or judicial interest, may cause harm from delay," and

---

[1] See, e.g., Apex Frozen Foods Private Ltd. v. United States, 862 F.3d 1322, 1332 (Fed. Cir. 2017); Agro Dutch Indus., Ltd. v. United States, 508 F.3d 1024, 1029 (Fed. Cir. 2007); Corus Staal BV v. United States, 502 F.3d 1370, 1381 (Fed. Cir. 2007).

is often inappropriate. Itochu Bldg. Prods. v. United States, 733 F.3d 1140, 1145 (Fed. Cir. 2013). Because Hualing's arguments dispute Commerce's statutory authority, and no further factual development is required, the court concludes that any failure to completely exhaust these arguments before Commerce does not preclude the court's review under these circumstances.

## I. Commerce's results were not legally inconsistent

Hualing argues that Commerce "violated its statutory mandate" when it found the same sale "bona fide in one proceeding and not the other." Hualing Br. at 13; see Compl. at 5, ECF No. 9 (Jan. 9, 2023). Here, Hualing refers to the Final Results in the AD AR, 87 Fed. Reg. 67,674, versus that of the CVD AR, 87 Fed. Reg. 51,967. Hualing is correct that in these separate yet concurrent administrative reviews, Commerce analyzed the same single sale Hualing made during the POR. In the CVD AR, Commerce selected Hualing as a mandatory respondent, treated the sale as bona fide, and assigned an individual countervailing duty rate. CVD Final Results, 87 Fed. Reg. at 51,968. In the parallel AD AR, Commerce rescinded the AR with respect to Hualing after finding its single sale to be not bona fide and therefore not reviewable. Final Results, 87 Fed. Reg. at 67,675; see e.g., Fresh Garlic Producers Ass'n v. United States, 121 F. Supp. 3d 1313, 1335 (CIT 2015) (concluding that Commerce properly rescinded an administrative review based upon a single sale where, because the sale was not bona fide, there were no sales within the POR for which Commerce could grant plaintiff a separate rate).

There is nothing in the NSR statute, 19 U.S.C. § 1675(a)(2)(B)(iv), which Hualing cites, that compels Commerce to reach the same conclusion in distinct administrative proceedings, even if based upon the same sale. Nor does Hualing cite to any other statute for support for this proposition. CVD and AD proceedings remedy different behaviors, and each of Commerce's

reviews are treated "as independent proceedings with separate records [] which lead to independent determinations." Tri Union Frozen Prods., Inc., v. United States, 163 F. Supp. 3d 1255, 1274 n.14 (CIT 2016) (quoting E.I. DuPont de Nemours & Co. v. United States, 22 CIT 19, 32 (1998)). Likewise, judicial review of such determinations must be limited to the record before the agency that was compiled during that segment of the proceeding, excluding previous and subsequent proceedings. Tri Union, 163 F. Supp. 3d at 1274 n.14. Thus, as a legal proposition, Hualing's argument fails.

Moreover, factually, Commerce, in the two administrative reviews in question, had before it two different records. In the AD AR, Hualing requested a new shipper review and placed the applicable information on the record; in the CVD AR, Hualing did not. See Issues and Decision Memorandum for the Final Results of the Antidumping Duty Administrative Review of Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China; 2019-2021, A-570-106, POR 10/09/2019-03/31/2021, at 5–9 (Dep't Commerce Nov. 2, 2022) ("I&D Memo"). In the AD AR, Hualing requested to be a voluntary respondent;[2] in the CVD AR, Commerce selected Hualing as a mandatory respondent. Id. And within the context of these two proceedings, Hualing submitted different questionnaire responses at different times regarding its business practices. Id. Even if based upon the same sale, Commerce must make its determinations based upon the record before it in each respective review. See, e.g., Echjay Forgings Private Ltd. v. United States, 475 F. Supp. 3d 1350, 1377 (CIT 2020) (citing Zhaoqing new Zhongya Aluminum

---

[2] After the AR was rescinded as to Hualing, no action was taken on this request. Of course, in normal practice Commerce does not grant such requests. Whether that is a reasonable approach is a question not at issue here.

Co., v. United States, 70 F. Supp. 3d 1298, 1307 (CIT 2015) ("Different standards applied to the same facts may reasonably lead to different outcomes. Thus, there is no legally cognizable inconsistency between Commerce's decision to treat the companies as a single entity in the [AD] proceeding but not in the CVD investigation.")). Accordingly, Hualing's claim that Commerce violated its statutory mandate on this basis fails.

## II. Commerce was not precluded by statute or prior practice from conducting a bona fide analysis

Next, Hualing argues that Commerce's decision to conduct a bona fide sales analysis of Hualing's sale renders Commerce's Final Results unsupported by substantial evidence. Hualing Br. at 22. Hualing is correct that as a separate rate applicant and not a mandatory respondent, Commerce did not need to calculate a specific rate for Hualing under 19 U.S.C. § 1677f-1. Next, citing the NSR statute, 19 U.S.C. § 1675(a)(2)(B)(iv),[3] Hualing argues that therefore Commerce should have evaluated only whether Hualing had a suspended entry during the POR and proceeded to conduct a separate rate analysis on those grounds. Hualing Br. at 12–14. Hualing argues thus it was improper to examine the bona fides of Hualing's sale at this point in the review. Id.

Commerce agrees that it typically does not conduct bona fide sales analysis for separate rate applicants. Def.'s Resp. to Pl.'s Rule 56.2 Mot. For J. on the Agency R. at 10, ECF No. 31

---

[3] Hualing cites particularly to the first sentence of this subsection which reads: "Any weighted average dumping margin or individual countervailing duty rate determined for an exporter or producer in a review conducted under clause (i) shall be based solely on the bona fide United States sales of an exporter or producer, as the case may be, made during the period covered by the review." 19 U.S.C. § 1675(a)(2)(B)(iv) (2018). The court need not decide what this means for a NSR, because it is not the decision as to Hualing's NSR that is before the court, as indicated.

(Aug. 24, 2023). This is due to a matter of resources—a bona fide analysis requires the collection and evaluation of extensive information, and doing so for every separate rate applicant would strain Commerce's resources. Id. at 11. Commerce claims it explained why "Hualing is not a typical separate rate respondent," in that Commerce had already collected relevant information regarding Hualing's sale in the NSR. Id. at 11–12 (referring to 19 U.S.C. § 1675(a)(2)(B)(iv)). As a result, Commerce was positioned to examine the bona fides of Hualing's sale in the context of AR, which ultimately led it to rescind the review because Hualing had no reviewable bona fide sales.

"Although Commerce is traditionally granted broad discretion in its selection of methodology to implement the [antidumping and countervailing duty statutes], Commerce may not abuse its discretion and its choice of methodology may not be arbitrary." Hussey Copper, Ltd. v. United States, 17 CIT 993, 996–998, 834 F. Supp. 413, 418–19 (1993) (citing (NTN Bearing Corp. of America v. United States, 14 CIT 623, 634, 747 F. Supp. 726, 736 (1990)). Rather, "an agency must either conform itself to its prior decisions or explain the reasons for its departure." Id. at 418. If Commerce does decide to depart from its practice, it is required to provide a reasonable explanation for doing so. See id. at 419 (citing Atchison, Topeka & Santa Fe Ry. Co. v. Wichita Bd. of Trade, 412 U.S. 800, 808 (1973)).

Section 1675(a)(2)(A) provides that, when conducting an administrative review of an AD order, Commerce shall determine "(i) the normal value and export price (or constructed export price) of each entry of the subject merchandise, and (ii) the dumping margin for each such entry." 19 U.S.C. § 1675(a)(2)(A). This directive reflects Commerce's authorization under 19 U.S.C. § 1673(1) to impose antidumping duties, in an amount equal to the amount by which normal value exceeds the export price (or constructed price), on "a class or kind of foreign merchandise" that it

determines "is being, or is likely to be, sold in the United States at less than its fair value . . . ." 19 U.S.C. § 1673(1) (2018).

Section 1675(a)(2)(A) is broad enough to accommodate Commerce's authority to examine which sales it will consider for purposes of establishing a dumping margin in an administrative review in some circumstances. Given 19 U.S.C. §§ 1675(a)(2)(A) and 1677a's silence with respect to the issue of what constitutes a sale, it is permissible for Commerce to disregard sales that are not bona fide in an effort to provide a dumping margin that suitably approximates an exporter or producer's selling practices. See 19 U.S.C. §§ 1675, 1677a. Any limitation on Commerce's ability to analyze the bona fides of a sale in the context of a NSR does not, on its own, preclude Commerce's authority to do so in a basic administrative review. See Novolipetsk Steel Pub. Joint Stock Co. v. United States, 483 F. Supp. 3d 1281, 1287 (CIT 2020).[4] Moreover, "a single sale transaction may warrant further scrutiny because there are fewer transactions from which to draw inferences about the exporter or producer's selling practices." Id. at 1288. "Thus, given its authority to disregard transactions that do not constitute bona fide sales, Commerce's practice of examining a single sale transaction is reasonable in an administrative review." Id.

Here, Commerce permissibly evaluated the bona fides surrounding Hualing's sale. See Hebei New Donghua Amino Acid Co., Ltd. v. United States, 29 CIT 603, 607–611, 374 F. Supp. 2d 1333, 1337–1340 (2005). Commerce had already analyzed Hualing's sale during the NSR. See Wooden Cabinets and Vanities and Components Thereof From the People's Republic of

---

[4] The court continues to recognize the bona fide sale test as a valid exercise of Commerce's authority. See, e.g., Windmill Int'l Pte., Ltd. v. United States, 26 CIT 221, 230, 193 F. Supp. 2d 1303, 1312 (2002); Am. Silicon Techs. v. United States, 24 CIT 612, 615–616, 110 F. Supp. 2d 992, 995 (2000).

Court No. 22-00334                                                                                              Page 12
**Public Version**

China: Recission of Antidumping Duty New Shipper Review; 2020, 86 Fed. Reg. 62,788 (Dep't Commerce Nov. 12, 2021).  Commerce had likewise gathered information regarding Hualing's sale via its questionnaire responses.  See Dalian Hualing Wood Co., Ltd. Section A Questionnaire Response & Voluntary Response Request, C.R. 67–71, P.R. 147 (Sept. 1, 2021); Dalian Hualing Wood Co., Ltd. Voluntary Section C & D Questionnaire Response, C.R. 74–76, P.R. 159–160 (Sept. 17, 2021); Dalian Hualing Wood Co., Ltd. Voluntary Supplemental Response, C.R. 118–122, P.R. 211 (Dec. 30, 2021).  Thus, it was permissible for Commerce to consider this information when reviewing Hualing's sale.[5]  When Hualing filed a NSR, "it became subject to the potential negative impact of that review on the administrative review."  See Fresh Garlic Producers Ass'n v. United States, 121 F. Supp. 3d 1313, 1335 (CIT 2015) (citing 19 C.F.R. §§ 351.214(i), 351.213(h) (2014)).  Assuming Commerce's determination is supported by substantial evidence, Commerce acted within its authority to rescind Hualing's AR when it found Hualing's only sale to be non-bona fide.  See id. ("Commerce 'may rescind an administrative review . . . if [Commerce] concludes that, during the period covered by the review, there were no entries, exports, or sales of the subject merchandise.'").

    **III.**    **Commerce's bona fide analysis was supported by substantial evidence**

        The court will now turn to the merits of the bona fide sales analysis itself.  Hualing asks that the court hold Commerce's bona fide analysis in the AD AR unsupported by substantial evidence and otherwise not in accordance with law.  Hualing Br. at 24–46.  Commerce's primary

---

[5] Once Commerce has information concerning a company's sales, it cannot ignore that relevant information.  See Floral Trade Council of Davis v. United States, 13 CIT 242, 242, 709 F. Supp. 229, 230 (1989).

basis for finding Hualing's sale non-bona fide was that the ADA designation and purported higher purchase and sale prices rendered it "not representative of Hualing's future selling practices." See I&D Memo at 21.

In determining whether a company's sales are bona fide, Commerce weighs "the totality of circumstances," including such factors as (i) the prices of such sales; (ii) whether such sales were made in commercial quantities; (iii) the timing of such sales; (iv) the expenses arising from such sales; (v) whether the subject merchandise involved in such sales was resold in the United States at a profit; (vi) whether such sales were made on an arms-length basis; and (vii) any other factor the agency finds relevant. 19 U.S.C. § 1675(a)(2)(B)(iv).[6] Commerce uses the bona fide sales test to exclude sales that are distortive or not indicative of future commercial behavior. Hebei, 374 F. Supp. 2d at 1339, 1342. "[A] sale is excluded only when its inclusion would lead to an unrepresentative price comparison, thus frustrating the 'apples to apples' comparison goal of the antidumping laws.'" FAG U.K. Ltd. v. United States, 20 CIT 1277, 1282, 945 F. Supp. 260, 265 (1996).

Commerce found Hualing's single sale to be not bona fide and therefore rescinded Hualing's AR based upon an analysis of these seven factors. Beginning with price, Commerce examined several different sets of data. First, Commerce compared import data from U.S. Customs and Border Protection ("CBP") to Hualing's sale. Preliminary Bona Fides Sale Analysis

---

[6] 19 U.S.C. § 1675(a)(2)(B)(iv) codifies these seven factors an administering authority considers in the context of a NSR. For general purposes, Commerce looks to this statute when conducting a bona fide sales analysis. See Foshan Nanhai Jiujiang Quan Li Spring Hardware Factory v. United States, 37 CIT 1023, 1024, 920 F. Supp. 2d 1350, 1353 (2013) (citation omitted).

Court No. 22-00334 Page 14
**Public Version**

at 4. Hualing's average unit value ("AUV") was multiple times[7] higher than the AUV of cabinets imported from China into the United States within the same Harmonized Tariff Schedule ("HTS") number. Id. at 4–5. Commerce acknowledged that although Hualing's sale price appeared atypical on this basis, import values are not necessarily the same as actual sale prices. Id. Thus, Commerce further compared Hualing's price to the mandatory respondents' reported quantity and value. Id. at 5. Where appropriate, Commerce compared the AUV on a per piece or per kilogram basis between Hualing and the other respondents, finding that "Hualing's price, when compared to other prices on the record . . . is [significantly higher]."[8] Id. "Specifically, [Commerce] chose the mandatory respondent's invoice that had the highest reported gross unit prices . . . and compared the average gross unit price of that invoice to Hualing's invoice . . . ." Id. Between the two invoices, Hualing's average gross unit price was found to be multiple times higher[9] than that of the mandatory respondent's average gross unit price. Id. at 5–6.

Hualing points to the "broad differences in the types of subject merchandise" used in Commerce's data sets and notes others with higher entry prices. Hualing Br. at 26–28; Hualing Reply Br. at 17–19. Specifically, Hualing argues against Commerce's use of broad-based AUV data averages when the subject merchandise is unique. Hualing Br. at 31. Additionally, Hualing

---

[7] Hualing's AUV was [[   ]] higher. Id.
[8] Commerce upheld its findings in U.S. Department of Commerce Memorandum: Final Bona Fides Sale Analysis, C.R. 142, P.R. 306 (Nov. 2, 2022).
[9] Hualing's average unit gross price was found to be [[   ]] higher. Id. at 5–6.

*Confidential Information Omitted*

Court No. 22-00334                                                                                         Page 15
**Public Version**

claims its price being in the higher ranges[10] does not make the price commercially unreasonable. Id. at 32.

In response to claims of uniqueness, and to account for the cost difference between different types of wood, Commerce compared surrogate values placed on the record. Preliminary Bona Fides Sale Analysis at 6. The difference in wood types did not account for the "vast difference" in price between Hualing's goods and others'. U.S. Department of Commerce Memorandum: Final Bona Fides Sale Analysis at 2–5, C.R. 142, P.R. 306 (Nov. 2, 2022) (stating that "Hualing's AUV is [within the highest ranges] of all entries within the POR," and that "[t]he price of Hualing's U.S. sale of cabinets . . . is many multiples the sales price of all other merchandise in other markets" and is thus "atypical"). The court concludes Commerce did not err in finding Hualing's sale price to be exceptionally high which, inter alia, raised concerns regarding the bona fide nature of Hualing's sale.

Next, Commerce analyzed the commercial quantity of Hualing's sale. In terms of quantity alone, Hualing's sale was not found to be atypical; however, the fact that Hualing did not make any subsequent sales of subject merchandise "call[ed] into question whether this single sale was made in commercial quantities" and therefore bona fide. Id. Hualing asserts that "the singularity of the sale does not evidence whether it was made in commercial quantities," and that the Government acknowledged Hualing's single sale as "not atypical when compared to other sale quantities on the record of this review." Hualing Br. at 37; Hualing Reply Br. at 19.

---

[10] Commerce found Hualing's price to be in the [[            ]]. U.S. Department of Commerce Memorandum: Final Bona Fides Sale Analysis at 2, C.R. 142, P.R. 306 (Nov. 2, 2022).

*Confidential Information Omitted*

Court No. 22-00334 Page 16
**Public Version**

Extremely low quantity is one indication of a non-bona fide sale; there is no evidence of ongoing cabinet sales by Hualing. Although a single sale alone is not inherently unreasonable, Commerce did not err in finding the quantity of Hualing's sale not indicative of its normal commercial practice.

The timing of Hualing's sale also raised concern for Commerce. "[A] Chinese company that never produced kitchen cabinets before the imposition of the AD order, and made no additional sales since the July 2020 sale is not indicative of a bona fide sale." Preliminary Bona Fides Sale Analysis at 7. Hualing claims the timing of its sale was justified by the importer's needs. See Hualing Br. at 39. And, like quantity, timing alone does not indicate a sale is not bona fide.[11] Id. Hualing asserts that it pursued an opportunity to fulfill an order for ADA compliant kitchen cabinets during the height of the COVID-19 pandemic, when production was globally hampered. See id. at 6. Although the court does not necessarily find Hualing's explanation untenable, it was not unreasonable for Commerce to find the timing of the transaction to be indicative of a non-bona fide sale.

Further, Commerce noted that the "lack of profit and atypical sale and resale prices" were not indicative of future commercial selling practices. Preliminary Bona Fides Sale Analysis at 8. With the cash deposits included, the U.S. importer would incur a substantial loss. Id. The importer then increased the resale price significantly,[12] much beyond the average for subject merchandise.

---

[11] Apparently, Hualing made sales of wooden boards prior to the AR, but not of cabinets specifically. See generally Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China: Initiation of Antidumping Duty New Shipper Review, 85 Fed. Reg. 77,162 (Dep't Commerce Dec. 1, 2020).

[12] The resale price was increased by [[    ]].

*Confidential Information Omitted*

Court No. 22-00334                                                                                                                Page 17
**Public Version**

Id. Hualing asserts that, with the AD and CVD cash deposits excluded, the importer made a profit. Hualing Br. at 42. Hualing also stressed the increased production costs of specialty, ADA compliant cabinets, and the lack of competition during the pandemic. Id. at 43–44. Still, Commerce did not err in finding the likelihood of profit upon resale atypical and not indicative of future selling practices.

Commerce did not find evidence, such as affiliation, to show that the sale negotiations between Hualing and the U.S. importer were other than at arm's length.[13] Preliminary Bona Fides Sale Analysis at 9. Nevertheless, Hualing's lack of history of producing "cabinets or 'specialty' cabinets for the U.S. market," combined with the "artificially high price," and that Hualing and the importer "planned in advance of the sale to ship 'specialty' cabinets that purportedly cost 'two or three' times the price of other cabinets," suggested to Commerce that "Hualing's single sale [was] not based on the independent interests of the parties involved and [was] only made for the purpose of establishing an artificial antidumping deposit rate . . . ." I&D Memo at 21.

Finally, Commerce found that "Hualing and the U.S. importer were unable to substantiate the sales pricing and cost of production regarding Hualing's ADA cabinets."[14] Preliminary Bona Fides Sale Analysis at 10. In sum, Commerce concluded:

> [T]he high price and the low quantity; the timing of the sale; the excessive resale price and lack of profit; and other relevant factors such as the single sale made during the POR, and the "specialty" nature of the product . . . [indicate] that this

---

[13] That is, based upon the legitimate independent interests of the parties involved. Novolipetsk, 483 F. Supp. 3d at 1290.

[14] At oral argument, Hualing asserted Commerce should have notified Hualing regarding any deficient information so that Hualing may have supplemented the record. See 19 U.S.C. § 1677m(d). The Government claimed Hualing did not exhaust this argument. Whether or not 19 U.S.C. § 1677m(d) or an exhaustion failure apply, Hualing has not proffered any other information it would have supplied. Therefore, the court will not consider Hualing's argument.

Court No. 22-00334 Page 18
**Public Version**

  sale is unlikely to be representative of Hualing's future sales to the U.S. importer or other customers.

<u>Id.</u> at 11.  Accordingly, Commerce found Hualing's sale to be not bona fide.

  The totality of the factors compels the court to conclude Commerce's analysis in the <u>Final Results</u> was reasonable.  The unknown nature of Hualing's "specialty" cabinet sale, combined with the exceptionally high price and extremely low quantity, tends to support Commerce's conclusion that the transaction was atypical of Hualing's normal business practices.  Commerce properly considered the totality of the circumstances surrounding Hualing's sale, including Hualing's contrary arguments, to find Hualing's transaction non-bona fide.  Although there might be cause to conclude otherwise, the court cannot conclude that Commerce erred in its analysis.  The recission of the AR with respect to Hualing was thereby warranted.

## CONCLUSION

  For the foregoing reasons, the court sustains Commerce's <u>Final Results</u>.  Judgment will enter accordingly.

<u>/s/ Jane A. Restani</u>
Jane A. Restani, Judge

Dated: <u>December 18, 2023</u>
   New York, New York